### DANIEL O'DRISCOLL *vs.* JOB F. FAXON.

Suffolk.   May 25, 26, 1892. — June 22, 1892.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Personal Injuries — Negligence — Due Care — Testimony of Expert — Requests for Rulings — Liability for Falling Bank.*

A workman employed in laying the foundation walls for a building may maintain an action against the owner of the premises for personal injuries occasioned by the falling of a bank, provided that the workman was in the exercise of due care, and the general plan adopted for protecting the bank from falling was inadequate.

If an expert witness, in answer to a question as to the proper protection to use to prevent a bank or any part of it from falling, states what he has himself done in a particular instance, a new trial will not be granted, if the irregularity of the answer is not covered by the exception of counsel.

A workman employed in laying the foundation walls for a building brought an action against the owner of the premises for injuries occasioned by the falling of a bank. *Held,* that the jury were rightly instructed that, while the plaintiff must show that he was in the exercise of due care, if the owner ordered the digging, and it was negligent to make it, he was liable, but if it was not negligent to make it, he was not liable; that if the owner did not order the digging, but gave a general authority to his contractor or the contractor's foreman to call on the latter's man to prepare the work and he was negligent, and by reason thereof the accident occurred, then the owner was liable, but if the man was not negligent, then the owner was not liable; and that if the owner gave authority to this contractor or the contractor's foreman to call upon his man to do such things as they might wish done to help them in any part of the work, not as a part which the owner had agreed to do, but as an assistance or aid to them in their own part, then the owner was not liable.

In an action for personal injuries occasioned by the falling of a bank at a place where an excavation had been made for the laying of the foundation walls for a building, the care exercised by the plaintiff is a question of fact for the jury.

It is not necessary to adopt the precise phraseology of requests for rulings; it is sufficient if they are given in substance.

A contractor agreed to do the mason-work in the erection of a building, to provide proper protection therefor, and to be responsible for all damages by accident, from the weather, and other causes; and the owner of the premises agreed to provide all labor and materials not included in the contract. An action was brought by a workman of the contractor against the owner of the premises for personal injuries occasioned by the falling of a bank where an excavation had been made for the laying of a wall. *Held*, that, under the contract, it could not be said that the protection of the bank so far as the contractor's workmen were concerned was incumbent on the contractor, and not on the owner, but that the rule applied that where several persons are engaged in the same work in which the negligent or unskilful performance of his part by one causes danger to the others in which each must necessarily depend for his safety upon the good faith, skill, and prudence of each of the others in doing his part of the work, it is the duty of each of the others engaged in the work to exercise the care and skill ordinarily employed by prudent men under similar circumstances.

TORT, for personal injuries occasioned to the plaintiff, by the falling upon him of a bank upon the defendant's premises.

At the trial in the Superior Court, before *Bishop*, J., there was evidence tending to show that the plaintiff, who was a stone mason, worked in the fall of 1889 for one James Smith in laying the foundation walls for a building on the defendant's premises, which extended from Kingston Street to Edinboro Street in Boston. The plaintiff testified that, at about half past four o'clock in the afternoon of November 4, one Knight, Smith's foreman, sent him down to a part of the wall on Edinboro Street, seven or eight feet from where he had been at work; that he looked at the wall, and told Knight that there was not room, and the bank must be cut; that he measured it, and there were only twenty-two inches, and the wall was to be two feet four inches; Knight turned round to the defendant Faxon, and said, " I want a man to cut this bank, we have n't room " ; that Faxon told one William Vanderbeck, " You had better go up and cut that bank " ; that he, the plaintiff, then went away to the higher part of the wall, six to eight feet distant, and remained there until Knight called him, and said it was ready; that he then returned and had laid one stone, and had the mortar spread for another, and stood upon the wall to lay the stone back to the bank, leaning forward facing into the cellar; that the wall upon which he was standing was about four and one half feet high from the cellar bottom; that while so standing he was struck by earth that fell from the bank in the rear of him, and thrown down from the wall; and that the next he knew he was down on the cellar

bottom, having received severe injuries.  The plaintiff testified, on cross-examination, that he did not look at the bank after it was cut; that there is always more or less breaking and scaling off in a bank; that there had been three or four shores against the bank; and that one which had been against it about where the earth fell that threw him off the wall had been removed in the forenoon of the day he fell to admit of the letting in of the stone he was to lay.

There was evidence tending to show that no actual crumbling or breaking away of the bank was visible after the cutting, which was slight, and that the bank was hard and stiff, and safe to dig into, if the digging was not too deep.

One Casey testified that he had had several years' experience in digging cellars, building cellar walls, and protecting banks.

" Q.  Mr. Casey, in a bank like the one on Edinboro' Street, composed of filling such as you have described, what is the proper protection to use to prevent the bank or any part of it from falling?  [Objected to, admitted, exception taken.] A.  Well, the way I protected my part of it was to drive some piles, and to put plenty of planks outside, about ten feet high, — keep them standing there, and they are standing there still. That is all I have to say in the matter.

" Q.  Supposing your banks had been dug down along here, ready for a wall to be put in where I am standing; supposing the bank had been cut right down across here, and the wall was to be built across here, in what way would you protect this bank from falling?  A.  I would drive piles just the same as this railing here, and put a plank back there, just where the jury's boots are, and that would keep it from coming down.

" Q.  That is to say, put piles down here, and then put planks along.  A.  That is what I did on Edinboro' Street.

" Q.  Right alongside of this very property?  A.  Yes, sir.

" The Court.  If that is objected to, he cannot state that.

" Mr. Jewell.  Sure.

" Mr. Elder.  It comes rather late now.

" The Court.  He can state what, in his opinion, is proper.

" Q.  Then you would build the stone wall, or have it built, along here, leaving this planking and the piles just as they were?  A.  Yes, sir."

The evidence was conflicting, as stated hereafter, in the judge's charge.

The contract and specifications between Smith and Faxon were put in evidence. According to the contract, Smith agreed to perform to the satisfaction of the defendant all the work included in the mason's contract for materials and labor, and the defendant agreed to provide all labor and materials not included in the contract, in such manner as not to delay the material progress of the work. The specifications declared that Smith should give his personal attention to and be fully responsible for work and material, together with all work of the different parties and workmen employed on the mason-work of the building, and should provide proper attention to the work at all times, be responsible for all damages by accident from the weather and other causes, take out a permit for building, and comply with all city ordinances regarding the obstruction of streets and protection of pedestrians. The contract was not signed, but a letter was put in evidence, written by Smith, stating his estimate for the work, etc., "as shown on plans and specifications."

The defendant requested the following rulings:

"1. That if the earth would not have fallen if there had been no digging out of the bank to let the stone into the bank, and that digging was ordered by Smith's foreman or men, to be done by a man employed and paid by Faxon, and ordered by Faxon to do such digging or filling as directed by Smith or his men, and in this instance did dig out the earth from the bank as directed by Smith's foreman or men, Faxon is not liable for any carelessness, if any, in performing the said digging, or for the consequences of the said digging.

"2. That although the man who did the digging was in the general employ of Faxon and paid by him, if, at the time he was digging, he was doing so under the direction and at the request of Smith's foreman, with Faxon's permission, he was a co-workman with the plaintiff and Smith's workman, and if the said digging caused the fall of the earth, it was the fault or carelessness of a co-workman, and the plaintiff cannot recover.

"3. If it was known by the plaintiff that such work as was

done by Faxon's men at the call of Smith, or his foreman or men, was to be done at the same time and in connection with the work the plaintiff was doing, the accident caused by the doing of said work is a risk of the business which the plaintiff assumes, and he cannot recover. . . .

"10. That if Smith or his foreman directed Faxon's man to dig into the wall beyond its regular face to let in a stone longer than the required thickness of the wall, rather than to break off the stone to the proper length, the said digging was no part of Faxon's duty under the evidence in this case, and Faxon cannot be held liable for any of the consequences of said digging; and although Faxon had given Smith permission to call upon his men to do any digging or filling that he might want done, it was Smith's act, and not Faxon's, and Faxon is not liable for any carelessness in said digging, or in not properly protecting the bank from its consequences.

"11. That Faxon's liability in protecting the bank ended when he had properly protected the bank, and excavated to such an extent as was required to allow the wall to be built at the required thickness, without disturbing the face of the bank. . . .

"14. If the bank was to be cut, and the plaintiff had knowledge of it, or knew that it had been cut, it was his duty to examine it, to see whether it was safe or liable to fall, before commencing to work under it in such a position that he could not see it if it began to break or fall out; and if he did not, he was not in the exercise of due care, and cannot recover.

"15. The specifications and the printed paper given the jury in connection with the letter called the bid are to be taken by the jury as the contract between Faxon and Smith, it appearing that the work between them was done thereunder.

"16. By the terms of that contract the protection of the bank, so far as Smith's workmen are concerned, was incumbent on Smith, and not on Faxon.

"17. That, in employing his workmen, they contracted with Smith, subject to the terms of his contract with Faxon, and any liability to them by means of their employment must be determined thereby."

The judge, after instructing the jury as to the principle that a workman assumes the risk of the business in which he engages,

and of injuries occurring from the fault of fellow servants, and that a person seeking to recover for an injury must himself have been free from fault, and must himself have used due and reasonable care, — that, in general, a person, whatever relation in life he may sustain, is responsible for negligent conduct respecting the person or property of another, — and that whether there is negligent conduct in a given case depends upon 'whether the person accused of negligence owed a duty to another, and whether he failed to perform it, — gave the defendant's fifteenth request, but did not give the sixteenth and seventeenth requests, but instead thereof, in connection with the fifteenth request, used the following language :

" The basis of the relations existing in this case is the contract between the defendant, Faxon, and Smith, his contractor for the mason-work. This contract is evidenced by a written paper in the form of an agreement, not signed, but which you will have, which has been put in, and of specifications, and of a written letter. In regard to these papers, I instruct you that the specifications and the printed paper given to you, which you will have in evidence, in connection with the letter called a bid, are to be taken by you as the contract between Faxon and Smith, it appearing that the work, as between them, was done under these papers and according to them. I do not find that there was any conflict between these papers and the conduct of the parties. It seems to me that the evidence shows that their conduct conformed to the agreements in the papers. By these papers, Smith, the contractor, agreed to do the mason-work; he was to give his personal attention to this work, and to be fully responsible for the mason-work, together with all the work of the different parties and workmen employed on the mason-work of the building, and he was to provide proper protection to the work at all times, and to be responsible for all damages by accident, from the weather, and other causes, etc. I am quoting now from the paper itself. The owner of the building, Faxon, in these papers, agreed to provide all labor and materials not included in the contract with Smith, and to do it seasonably so as to make way for Smith, and not to impede him when he came to do his own part of the work.

" I instruct you that under these papers all mason-work was

to be done by Smith. Whatever was properly comprehended under the term 'mason-work,' — so far as the circumstances of this case are concerned it may not be material for you to inquire what exactly in all respects it did include, — but so far as whatever may properly be termed 'mason-work' in regard to that building, Smith was bound to do it. And he was to provide proper protection to that work, to the mason-work, and to that portion of the work which it was his duty to do at all times. And he was to be responsible for all damages by accident, from the weather, and other causes. . . .

" All these things Smith was to do, and he was to be responsible for the protection of the work, this part of the work, and he would be responsible for any accident or injury occurring through any failure to do this work, or to provide proper protection in regard to this part of the work.

" Under these papers the owner, Faxon, agreed to provide all labor and materials not included in the contract with Smith, and I instruct you that the obligation assumed by these papers by Faxon was, among other things, to provide the foundation, the trench, the place for the wall, and that under the language of the papers, providing that he shall provide all labor not included in the contract, it was Faxon's duty to perform the labor of excavating the trench, and to do it seasonably. According to the evidence in the case, the parties conformed to this interpretation of the contract as to what they did, what they undertook to do, and what the contracts, as I view the contracts, called upon them to do. Faxon proceeded to dig the trench and to prepare for the wall; Smith proceeded to do the mason-work, including the laying of the wall.

" Under this division of work in regard to the erection of this building, reciprocal duties and obligations arose. Smith became responsible for any want of due care in the prosecution of his part of the business, and Faxon, in like manner, became responsible for any want of due care in the prosecution of his part. If the proprietor performed some part of the work, and another part was let out to a contractor, then the rule applies, that where several persons are engaged in the same work, in which the negligent or unskilful performance of his part by one causes danger to the others, in which each must necessarily depend for

his safety upon the good faith, skill, and prudence of each of the others in doing his part of the work, it is the duty of each of the others engaged in the work to exercise the care and skill ordinarily employed by prudent men under similar circumstances. The test of negligence is, in all instances, whether a person has or has not exercised ordinary care. If he has exercised ordinary care, there is no negligence; if he has failed to exercise ordinary care, there is negligence. . . .

" There being two claims here on the part of the plaintiff as to the way in which this accident occurred, one that it was through the defendant's fault in digging at the bank, and the other that it was through the defendant's fault in not having in the beginning properly dug down the bank, and secured it, first consider the effect of digging into the bank which occurred just before the accident. I mean this digging in when the question was as to the laying of the stone, when they got the stone there, and there was a question as to the digging into the bank in order to fit the stone in its place. If that digging in was the cause of the accident, then who was responsible for it?

" There is a very material conflict of testimony, and it is your duty to settle the question of fact in regard to what occurred; it is your duty to settle the question of fact how wide the bank was, how wide the place was, for the laying of the stone before the digging took place. Whether it was dug out to the full width required for the wall, which I believe it is conceded was twenty-eight inches, two feet and four inches being the width of the wall, — whether, I say, the bank was dug out to that width to begin with, and this additional excavation made into the bank at that time was for the purpose of letting in a stone which exceeded that width, or whether the bank had not been cut out to that width, and was less than that width, and the digging in was for the purpose of letting in a. stone of the width of the wall, — I say that question of fact, among others, is for your determination, and not to be discussed by me.

" There is also a conflict of testimony in regard to who ordered the digging, whether it was ordered by Faxon himself, whether it was ordered by a person for whose conduct he was responsible, or whether it was ordered by Smith's agent, and Faxon knew nothing about it. These are questions of fact for you to determine upon the evidence.

" If Faxon ordered this digging out, and it was the cause of the accident, and if it was negligent and a want of due care under the circumstances to make that digging, then Faxon is responsible for the consequences of the accident, provided, of course, that the plaintiff was in the exercise of due care. In all these propositions, where I may say to you under certain circumstances the defendant will be liable, it is always accompanied by the provision that the plaintiff was in the exercise of due care.

" If, however, Faxon ordered it to be done, and it was the cause of the accident, and yet if it was not under all the circumstances of the case negligent to make that digging, then Faxon is not responsible, because, though an accident happened, it was not one which ordinary care and foresight were bound to guard against.

" These two propositions I have stated to you upon the theory that you shall find by the evidence, if you do so find, that Faxon did order the digging out.

" I now say to you upon the theory that you find Faxon did not order the digging out, then if you find that he had given a general authority before that time to Smith or Knight to call upon his man to do whatever was required to be done to fit the bank for the wall, as a part of the work which he, Faxon, had undertaken to do, the bank requiring, as a part of the work which Faxon was to do, any excavating, or to be further excavated in that place; and his man was so called upon to do this digging, and the manner of the doing it was negligent, and by reason of that negligence the accident occurred, Faxon is liable. But if, under the circumstances, the manner in which it was done was not negligent, but was accompanied by the care, precautions, and protections which a reasonable man would exercise, then he is not liable. . . .

" Further, if you find that Faxon had given authority to Smith, or Knight, to call upon his man to do such things as they might wish done to help them in any part of their work, not as a part of the work which Faxon had agreed to do, Faxon's part of the work having been done, but as an assistance and aid to them in their own part of the undertaking, and in that capacity they called upon Faxon's man, he is not liable. . . .

" The plaintiff claims that the defendant is responsible for the general condition of that bank, independently of this particular digging which took place just before the lowering of the stone. The plaintiff claims that the conduct of Faxon in cutting down the bank in the way in which it was cut down, perpendicularly, or nearly so, nearly perpendicularly, as the plaintiff claims, and in protecting it by the kind of shore which he used, which, as the plaintiff says, had to be taken away in places as the wall was laid, was not the exercise of due care on the part of the defendant, and that so far as that was the cause of the injury to the plaintiff, the defendant is responsible for it.

" It was the duty of the defendant, to properly protect this bank, that is, to do the part of the work which he undertook to do in a manner free from negligence, with all due and reasonable precautions to the safety of those who had occasion to be affected by it. The defendant says that he performed that duty ; he says that he cut down the bank ; that upon his attention being called to the fact that it had begun to crack in a place some four or five feet or three or four feet away from the brink, he immediately protected it by shoring it in the way which has been testified to upon the stand, and that protection was ample, and it was sufficient, and it was all that a reasonable man could be called upon to do.

" And he says that the final breaking away of this piece of the bank, falling upon the plaintiff and injuring him, was not at all the result of any want of proper shoring in the beginning, but of other causes for which he was not responsible.

" To that the plaintiff replies, that if a different kind of shoring, by sheet planking, something put against the bank which should remain there after the wall was built, had been used, the accident could have been prevented, and that which caused the accident would not have existed.

" These are questions of fact for your consideration. We are all bound to do that which a reasonable man ought to do to secure the safety of everybody who is affected by our acts. . . . Nobody is safe, and nobody can be insured against injury ; and the plaintiff here is not out of the category of ordinary persons, who must run the ordinary risks. But when he enters into an employment he does have a right to claim that everybody con-

nected with that matter shall do all that is reasonable to ask the man to do to secure his protection. . . . In a case of this sort you are to be governed by the principle; you are not to be lenient towards a person if you think he has violated the principle; you are not to be generous towards a person who you think has suffered, if he is not entitled to recover under the principle."

Referring to the defendant's third request, the judge used the following language:

" As to one of the points, I instruct you that, if it was known by the plaintiff that such work as was done by Faxon's men at the call of Smith, or his foreman, or men, was to be done at the same time and in connection with the work the plaintiff was doing, then the plaintiff was bound to exercise the ordinary degree of care and prudence in inspecting the bank before he went to work upon it again, to ascertain whether it was safe and prudent for him to go to work there, and if he did not do so, he cannot recover."

The judge gave the defendant's seventh request, adding thereto the sentence at the end of the following paragraph, as follows:

" Ordinary care is all that is required of Faxon in protecting the bank, and if he has taken such care as men of ordinary prudence would have done in the same situation and under the same circumstances he is not liable. I instruct you, gentlemen, it is a question of fact for you to determine what care the plaintiff exercised when he went there to put this stone in after the digging."

The judge then gave the following ruling, instead of the defendant's tenth and eleventh requests:

" If Smith or his foreman directed Faxon's man to dig into the wall beyond its regular face, to let in a stone longer than the required thickness of the wall rather than to break off the stone to the proper length, — that is, if the excavation had been made to the width required for the wall, which was the extent of Faxon's duty, — it was then no part of Faxon's duty to dig the excavation further, and he cannot be held liable for any consequences of the digging. Although Faxon had given Smith permission to call upon his men to do any digging or filling that he might want done, yet if Smith put the man William to digging into something which it was beyond Faxon's duty under

the relations which he sustained to Smith to do, set him to excavating something which was no part of Faxon's obligation, and if done it was not the work of Faxon, then Faxon is not responsible. His duty was fulfilled when he had excavated the bank to the proper width and properly protected it."

In regard to the defendant's thirteenth request, the court instructed the jury in the following language:

"If the proper and ordinary place for the plaintiff to stand, while laying the stone in question, was on the ground in front of the wall and not on the wall, he was not in the exercise of due care in standing upon the wall, and cannot recover."

In regard to the defendant's fourteenth request, the court instructed the jury in the following language:

"If the bank was to be cut, and the plaintiff had knowledge of it or knew that it had been cut, it was his duty to examine it, to see whether it was safe, or liable to fall, before commencing to work under it in such a position that he could not see it. Which is the same thing as saying, as I have already said to you, that it is his duty to take such precaution as a reasonable man would take, and to make such examination as was reasonable, or it was reasonable to expect he would make, to see that the place was safe."

The judge declined to give the defendant's first and second requests, except so far as the same are covered by the instructions hereinbefore recited.

The judge further instructed the jury as follows:

"If the defendant Faxon assumed to prepare the cellar and bank for laying the wall, he was bound to build or protect the bank so that it would be reasonably safe for the men employed in laying the wall, and if it was defective in its construction in any such way or degree as to show it was not built or protected with that measure of prudence and care which a prudent man would exercise in building and protecting such a bank, in such a place and for such a purpose, and if in consequence of such negligent construction the plaintiff was hurt, without negligence on his part, he is entitled to recover, and the defendant is liable.

"If the plaintiff was upon the defendant's premises by his invitation to perform work there, he, Faxon, was bound to use

ordinary care to make the premises reasonably safe for the plaintiff to do his work.

"If defendant Faxon assumed or contracted to prepare the bank on Edinboro' Street for the laying of the wall, and provided a man in his employment to cut away the bank from time to time as the progress of the work required it, and when called upon so to do by the masons or their foreman, that is, if the bank was not cut away to the requisite width beforehand, but remained to be cut away as the progress of the work required it, that man was Faxon's servant and not the fellow servant of the plaintiff. I have already said, that it is a question for the jury to decide whether the bank was reasonably safe under all the circumstances of the case, including the character of the soil, the manner in which the bank was cut, its height, supports, and the like.

"If the cutting of the bank to admit the stone which the plaintiff was about to lay was done by Faxon's direction or that of his foreman, or by a man in his employment, and it was his duty to prepare the bank and cut it away to admit the stone, Faxon is liable if he or the man failed to use reasonable care in regard to the cutting of the bank, if the injuries resulted from the lack of such reasonable care.

"The plaintiff is required to use such care, and such care only, as men of ordinary prudence and care use in similar circumstances.

"The plaintiff had a right to rely upon the premises near which he was at work being in reasonably safe and secure condition, he himself being in the exercise of due care.

"The plaintiff was not bound to see to it that the work, if any, which Faxon assumed to do was done in a safe and secure manner, beyond the duty of using due care to see that it was so done, and he is not guilty of negligence in going to work there unless the appearance of the bank and the work done thereon were such as to indicate to a man of ordinary prudence and caution that the bank or its surroundings were unsafe. He was bound to exercise due care, to examine and see if the bank was safe."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*R. Lund & W. E. Jewell*, for the defendants.

*S. J. Elder*, for the plaintiff.

ALLEN, J.   The defendant contends that the plaintiff did not show that he was in the exercise of due care, and that for this reason the case should have been withdrawn from the jury.   In support of this view it is urged that, after the cutting of the bank by Vanderbeck, the plaintiff, who was a mason of long experience, went to work under it without looking to see the effect of the cutting; that he stood upon the wall with his back to the bank; that there is always more or less breaking and scaling off in a bank; and that he ought to have anticipated that the bank might fall, knowing as he did that a shore which had been used to support it had on the morning of that day been removed.   But there was evidence tending to show that the shore had been removed as a matter of necessity, in order to allow the prosecution of the work upon the wall; that no actual crumbling or breaking away of the bank was visible after the cutting, so that looking at it would not have disclosed anything of the kind; that the cutting was slight; that the bank was hard and stiff and safe to dig into, if the digging was not too deep; that Knight the foreman told him it was ready; and we think it was rightly left to the jury to determine whether at the time of the plaintiff's injury the danger was so imminently threatening, from the general liability of the bank to break away, as to make it careless for the plaintiff to continue his work under the direction of his foreman in building the wall.   There was some conflict of evidence, and we cannot say on uncontradicted evidence that the plaintiff was not entitled to go to the jury.   It was also a question for the jury to determine whether it was consistent with due care for him while at work to stand as he did upon the wall.

The defendant further contends, that upon the whole evidence no want of due care on his part was shown; and in support of this view it is urged that no notice was given to him that the bank was dangerous; that the plaintiff and his witnesses did not regard it as dangerous; that if the plaintiff, with his experience, was not guilty of carelessness in working under the bank, the defendant was not guilty of carelessness in failing to anticipate that earth from the bank might fall upon the plaintiff; and that, if the cutting of the bank was such as to cause no reasonable apprehension of danger, then the falling of the

earth was a mere accident. But we think the jury might be allowed to take a broader view of the defendant's responsibility. The duty rested upon him of using reasonable care in providing a safe place for the masons to do their work in building the wall, and the jury might hold him bound to use reasonable care to guard against accidents which at the moment of their occurrence a workman might not anticipate, though himself in the exercise of reasonable care under the circumstances in which he was placed. *Holden* v. *Fitchburg Railroad*, 129 Mass. 268, 276. *Ryan* v. *Tarbox*, 135 Mass. 207. *Elmer* v. *Locke*, 135 Mass. 575. There was some evidence tending to show that the general plan which was adopted for protecting the bank from falling was inadequate. If the jury were of opinion that it was so, and that the defendant failed to use reasonable care in making it safe against accidents, they might lawfully hold him responsible to one who was himself in the exercise of due care at the time of the injury. Such seems to have been the view taken by the jury, and we cannot say, upon the evidence, that it was the duty of the presiding justice to withdraw the case from their consideration.

The witness Casey was asked what was the proper protection to use, to prevent such a bank or any part of it from falling. This question was objected to by the defendant, but it was clearly competent in form, it being assumed that Casey was qualified to testify as an expert on that subject. In answering the question, the witness stated how he protected his part of the bank, apparently referring to another part of the same bank. No objection was taken to the form of the answer, and he was further asked in what way, under certain supposed facts, he would prevent the bank from falling, and this question was answered without objection. The witness added, still without further objection from counsel, " That is what I did on Edinboro Street, right alongside of this very property." The court thereupon interposed, saying, " If that is objected to, he cannot state that," and the witness was limited to stating his opinion as to the proper way of doing it. Strictly speaking, the statement of what the witness had himself done in a particular instance may have been improper, and this view was expressed by the court at the time. This mode of answering appears to have been

intended merely as a form of giving the opinion of the witness. The objection taken by counsel did not relate to the form of the answer. The jury were sufficiently cautioned upon the subject. The exception actually taken cannot be supported. The slight irregularity of the witness in making his answer was not covered by the defendant's exception, and furnishes no ground for our granting a new trial.

We find no error in law in respect to the instructions which were asked by the defendant.

His first and second requests rested on the position taken by him that the digging out of the bank was not ordered by himself, but by Knight, the foreman of the contracting mason, and that therefore he (the defendant) was not responsible for the consequences, even though Vanderbeck, the man who did the work, was in his general employment. The instructions as to the respective duties and obligations of the defendant and of the contracting mason sufficiently covered the requests which were made, and explicitly dealt with the view of the law presented by the defendant, on the assumption that the digging was not ordered by himself.

The defendant criticises the addition by the presiding justice to the seventh requested instruction; but we see no error of law in it.

The third, tenth, eleventh, and fourteenth requests were complied with in substance. It was not necessary to adopt the precise phraseology of the requests.

The sixteenth request was rightly refused, and the subject of it was sufficiently covered by the instructions given.

The defendant's counsel in the argument make some other criticisms upon expressions used in the judge's charge to the jury. The instructions requested were numerous, and the charge was full and minute. Without meaning to imply that the criticisms are well founded, we must limit our examination to exceptions actually taken, unless it is apparent that substantial injustice has been done, and that the verdict which was rendered cannot be supported in law.

*Exceptions overruled.*