&#8212;&#8212;&#8212;

JOHN FEENEY *vs.* YORK MANUFACTURING COMPANY.

JOHN J. DONOVAN *vs.* SAME.

Suffolk.     September 8, 1905. &#8212; October 19, 1905.

Present: KNOWLTON, C. J., LATHROP, HAMMOND, LORING, & BRALEY, JJ.

*Negligence*, Employer's liability. *Evidence*, Records, Competency. *Practice, Civil*, Exceptions.

A temporary staging, provided for the use of steam fitters in the employ of a manufacturing company engaged in putting into a building the plant of an ice company whose superintendent has erected the staging upon notification from the manufacturing company to do so, is not a part of the "ways, works or machinery" of the manufacturing company within the meaning of R. L. c. 106, § 71, cl. 1.

If a workman is ordered by a superintendent of his employer to go upon a defective staging, of which the structural weakness readily can be discovered by even a superficial examination, and which the superintendent negligently has failed to inspect, the employer is liable for an injury to the workman caused by the falling of the staging, although it was built by another corporation and the employer and its superintendent had nothing to do with its construction.

The daily record kept in a hospital of the medical treatment of its patients does not prove itself, and is not admissible in evidence without the testimony of the person who made the entry relied upon or that of some person properly charged with the custody of the records.

When incompetent evidence has been admitted against the objection and exception of the opposing party, the party who introduced the evidence cannot except to a limitation of its effect in the charge of the presiding judge.

TWO ACTIONS OF TORT, under R. L. c. 106, § 71, cl. 2, for personal injuries from the fall of a staging on which the respective plaintiffs were sent to work by the defendant's superintendent. Writs dated November 1, 1901.

At the trial in the Superior Court before *Hardy*, J. it appeared that the plaintiffs were steam fitters in the employ of the defendant, a company engaged in the business of putting in machinery, boilers and manufacturing plants in general. One Strickler was entrusted with and exercised superintendence over the defendant's work within the meaning of the employers' liability act. It was admitted that one Rankin, a sub-foreman in the defendant's employ, upon the evidence might have been found by the jury to have been a superintendent within the meaning of the employers' liability act.

On August 3, 1901, the defendant was engaged in the performance of a contract for the installing of an ice plant in the premises of the Commonwealth Hygienic Ice Company of Boston. By the terms of a contract between the defendant and the ice company, the latter was to furnish and erect all temporary blocking, staging and timber necessary for the execution of the work specified in the contract. For the erection of the staging, by the fall of which the plaintiffs were injured, a competent builder, named Blanchard, was employed by the Commonwealth Hygienic Ice Company. The staging was erected by that company upon notice by the defendant's superintendent to get it ready. With the exception of this notice neither Strickler nor any of the employees of the defendant had anything to do with the erection of the staging. The staging was completed on or before August 2, and the defendant was notified. On August 3 the plaintiffs were ordered by Strickler or Rankin to go upon the staging to work, and while there the staging gave way under them and they fell and were injured.

There was evidence introduced by the plaintiffs that the staging was constructed negligently and unskilfully of defective material, and was of insufficient strength to bear the weight of the men sent upon it. There was further evidence that before the plaintiffs were sent upon the staging both Strickler and Rankin had been notified by persons other than the plaintiffs of a defective and dangerous condition of the staging. There

was evidence that an ice run descended into the room on the floor of which the uprights supporting the staging rested; that on the afternoon of August 2, after the completion of the staging, blocks of ice weighing two hundred pounds each were slid down this run into the space where the uprights stood until the ice lay two or three layers thick; that the ice slid down with sufficient force to have broken the uprights had they been struck by it; that this work of sliding ice was done entirely by the employees of the Commonwealth Hygienic Ice Company; that Rankin was present at the time that the ice was being slid into the space under the staging, and that no inspection of the condition of the staging was made by either Rankin or Strickler after the work of sending in the ice had been finished.

The defendant requested the following ruling: " The liability of a defendant for the negligence of a superintendent in sending a man to work in a place which is dangerous does not extend to cases where the superintendent sends such man to work upon a staging owned by another concern over which the defendant has no rights of repair and no control, unless said superintendent actually knew such staging was unsafe at the time of his so sending." The judge refused to make this ruling, and the defendant excepted.

During the trial it appeared in evidence that the plaintiff Feeney, within an hour or two after the accident, was treated at the Boston City Hospital. No physicians from the hospital were called by either party as witnesses, but the defendant introduced the record of the hospital against the objection and exception of the plaintiff. In this hospital record the following clause appeared [apparently relating to Feeney]:

" Immediately after admission, the patient dictated and demanded such treatment as was deemed unnecessary; refused to abide by such treatment as was suggested. (Scannel) Discharged on request."

In his charge the judge said, referring to this hospital record:

" You have here evidence on the part of the plaintiffs that they went to the hospital and certain things were done and that they insisted on going away. Now that is I say hearsay evidence to a certain extent. It would not be introduced in the case except that it is well known that it is kept in every

case. But the fact that the man wanted to go home, the comments of the physicians that he did not wish to submit to medical treatment is not to weigh with you one way or the other, except so far as it shows that the plaintiff did not wish to remain there. The plaintiff says he did not wish to remain there so that is not inconsistent with the plaintiff's statement in that respect."

At the conclusion of the charge the defendant's counsel said: "Then I wish to except to your honor's remarks that the hospital records are not particularly significant because the man might have wanted to go home. The statement went beyond that. The statement was that he demanded such extraordinary treatment that they refused to give it to him and he went home. I wish to except to that."

The jury returned verdicts for the plaintiffs, for Feeney in the sum of $2,500, and for Donovan in the sum of $2,000. The defendant alleged exceptions.

*F. N. Nay & L. M. Abbott,* for the defendant.
*H. A. Richardson,* for the plaintiffs.

BRALEY, J. The temporary staging, provided for the use of the plaintiffs, collapsed because constructed of insufficient materials; but under R. L. c. 106, § 71, cl. 1, it formed no part of the permanent " ways, works or machinery " of the defendant. *Burns* v. *Washburn,* 160 Mass. 457.

By the statute, the right of recovery, however, is not limited to injuries caused to employees by defective permanent appliances, but also embraces wrongs that may arise from negligence of the employer, or of those properly representing him, in directing an employee to use an unsafe appliance, even though it may be only of a temporary character. *Arkerson* v. *Dennison,* 117 Mass. 407. *Ryan* v. *Tarbox,* 135 Mass. 207. *Haley* v. *Case,* 142 Mass. 316. *Ryalls* v. *Mechanics' Mills,* 150 Mass. 190. *Meagher* v. *Crawford Laundry Machinery Co.* 187 Mass. 586.

The doctrine of exemption from liability of an employer who buys from reputable makers, for use in his business, a completed machine or other appliances which generally are recognized as being suitable, but prove to be unsound by reason of latent defects, has no application in the present case, as it appears from the evidence that upon a superficial examination the

structural weakness of the staging could have been readily discovered. *Roughan* v. *Boston & Lockport Block Co.* 161 Mass. 24. *Reynolds* v. *Merchants' Woolen Co.* 168 Mass. 501. See also *Toy* v. *United States Cartridge Co.* 159 Mass. 313, 315.

It also may be said that if sufficient and suitable materials had been provided by the defendant, and the plaintiffs in their own way had built the staging they were to use, the risk of defective construction would have been assumed by them. *Colton* v. *Richards,* 123 Mass. 484, 488. *Reynolds* v. *Barnard,* 168 Mass. 226. *Thompson* v. *Worcester,* 184 Mass. 354.

But being ignorant of its construction, or suitability, when directions were given, by a person entrusted with supervision, to use a completed staging, they had a right to rely on the presumption that their employer had performed its duty, with the implied assurance that the structure so furnished could be safely used. *Connolly* v. *Waltham,* 156 Mass. 368, 370. *O'Driscoll* v. *Faxon,* 156 Mass. 527. *Brady* v. *Norcross,* 172 Mass. 331, 333. *Cunningham* v. *Atlas Tack Co.* 187 Mass. 51.

In the discharge of this duty, the defendant's liability was not limited alone to the actual knowledge of either its superintendent, or of an under foreman who acted as superintendent, that the staging was unsound. It included also responsibility for the negligence of the acting superintendent in not ascertaining that fact before directing the plaintiffs to use the staging, if by the exercise of due diligence on his part this condition, upon examination, would have been made known to him. *Arkerson* v. *Dennison, Connolly* v. *Waltham, ubi supra.*

Such an inquiry is a question of fact, and as the ruling requested by the defendant could not be given, both cases were rightly submitted to the jury with instructions that were sufficiently full.

A further exception is presented in the first case relating to the effect to be given to the admission of certain evidence.

After his injury the plaintiff Feeney became an inmate of a hospital which kept daily records of the medical treatment of its patients. Subject to his exception, and without the testimony of the person who made the entry concerning him, or that of any one properly charged with their custody, this entry was introduced in evidence by the defendant.

The exceptions are obscure as to the precise ground upon which at first the evidence was admitted. From the statement of the defendant's counsel at the close of the instructions, it may be assumed that the object was to affect the measure of damages by showing that the plaintiff had refused to submit himself to proper medical treatment, and insisted upon a different course being prescribed, and that no change being granted, he refused to remain, and left the hospital.

It further may be assumed from the instructions, that the plaintiff was a witness at the trial, and this testimony finally was-deemed admissible as in some manner tending to contradict him.

If for either purpose it was competent, the record did not prove itself, and therefore was inadmissible, without sufficient authentication, for reasons fully stated in the recent case of *Cashin* v. *New York, New Haven, & Hartford Railroad*, 185 Mass. 543, 546. At the time of admission no limitation appears to have been put upon the evidential scope of the record. Subsequently the presiding judge limited its effect as being in substance a declaration by the plaintiff that he did not desire to remain, or to submit himself to the proposed treatment.

Incompetent evidence, if admitted without objection, has the same probative effect as if competent. *Roberts* v. *Boston*, 149 Mass. 346. *Rapson* v. *Leighton*, 187 Mass. 432, and cases cited on page 435.

But under our practice, when admitted as it was here, subject to the exception of the plaintiff, the subsequent ruling limiting its relevancy, to which the defendant excepted, was within the discretionary power of the trial court. *Hawes* v. *Gustin*, 2 Allen, 402, 406. *Eldridge* v. *Hawley*, 115 Mass. 410, 412. *Roberts* v. *Boston, ubi supra. Anthony* v. *Travis*, 148 Mass. 53.

By the course pursued, the instructions given on this part of the case must be taken as expressing the final ruling, with the practical result that the defendant had a limited benefit of evidence that should have been entirely excluded. Because the original error was partially cured, it cannot now consistently complain that for this reason a new trial should be granted.

*Exceptions overruled.*