KILMAN SILVERMAN *vs.* FRED M. CARR & others, executors.

Middlesex. November 12, 1908.— January 5, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Negligence. Landlord and Tenant.*

At the trial of an action of tort for personal injuries alleged to have been received by the plaintiff by reason of negligence of the defendant or his employees, it appeared that the defendant leased to the plaintiff certain premises for use as a factory and made a contract to furnish to him, for a fixed price during the working hours of the factory, power for the running of it from a building across the street, it being agreed that, if the power was used beyond such working hours, an extra charge should be made. The power so furnished was carried across the street by means of a rope drive, and thence communicated by the plaintiff without the use of tight and loose pulleys to a counter shaft and thence to a main shaft in the factory. There was evidence tending to show that the failure of the plaintiff to use tight and loose pulleys was not improper, that the mechanical arrangements for starting and stopping the rope drive were in the building across the street from the plaintiff's factory and entirely under the control of the defendant, that the working hours of the plaintiff's factory were over at 6 P. M., that on the afternoon of the plaintiff's injury the power had been turned off and the rope drive had ceased running, and that thereupon the plaintiff had begun to relace a belt which was out of repair on the counter shaft in a manner which the evidence tended to show was proper, when at 6.25 P. M. without warning the rope drive started up and the plaintiff was injured. There was no evidence to explain the starting of the rope drive. The presiding judge ordered a verdict for the defendant and reported the case. *Held,* that a verdict should not have been ordered for the defendant, since the jury might have found that the plaintiff was in the exercise of due care, that it was the duty of the defendant to exercise reasonable diligence not to start the rope drive without warning the plaintiff after it had been stopped at the close of the

working hours, and, in the absence of any explanation from the defendant in whose exclusive control the starting and stopping apparatus was, that the starting of the rope drive was due to a failure on the part of the defendant to exercise such diligence.

TORT, for personal injuries received by the plaintiff by reason of alleged negligence of the defendants' testator, as stated in the opinion. Writ in the Superior Court for the county of Middlesex dated February 5, 1904.

At the trial, which was before *Bishop*, J., the material facts in evidence were as stated in the opinion. The presiding judge directed a verdict for the defendants and reported the case for determination by this court.

*L. S. Thierry*, for the plaintiff.

*J. W. Keith*, (*E. D. Sibley* with him,) for the defendants.

BRALEY, J. It was not in dispute that the plaintiff, having leased the premises to be used in the manufacture of tables and chairs, also hired from the defendants' testator, whose factory was on the opposite side of the street, power to operate the machinery which he used in his business. The power supplied was communicated by a rope drive running from the factory across the street to the plaintiff's shop, where by means of a jack shaft it was transmitted to the main shaft, and thence to the various machines. It also could have been found that the entire mechanical arrangement for starting and stopping the rope drive were in the factory and wholly under the direction and control of the defendants' testator. By the terms of the contract it was agreed for a fixed price, that the plaintiff should have the right to use the power during the working hours of the factory, but, if he desired to run his machinery longer, the overtime would be an additional charge. A further finding would have been justified, that as lessor the defendants' testator must have understood and been fully informed of the purpose for which the premises had been let and the use of the power hired. Consequently he was reasonably bound from common experience to know and anticipate, that if without warning, after having been properly stopped, the rope drive was shortly after set running, the plaintiff's machinery unexpectedly would be put in motion, and either he or his workmen might be injured. *Schofield* v. *Wood*, 170 Mass. 415. *Turner* v. *Page*, 186 Mass. 600,

602, and cases cited. *Oulighan* v. *Butler*, 189 Mass. 287, 292, and cases cited. *Lebourdais* v. *Vitrified Wheel Co.* 194 Mass. 341, 344.

If they found these facts, then the testator for a consideration had undertaken, not only to maintain the rope drive with its connections in the factory in proper repair, to furnish power during the time required, but to exercise reasonable diligence to see that, unless notice had been given previously, the power should not be turned on until the next morning, after having been shut off at the close of the day. *Gill* v. *Middleton*, 105 Mass. 477, 478. *Poor* v. *Sears*, 154 Mass. 539.

It is stated in the report that on the day of the accident " the power in the plaintiff's shop stopped as usual about six o' clock " when " at about twenty-five minutes past six o' clock . . . the machinery suddenly and without notice started in rapid motion," causing the injuries for which damages are sought. The defendants contend that these circumstances are insufficient to prove negligence of their testator. But again, no intervening cause having been shown or suggested, or any explanation offered, the jury were at liberty to infer, from his exclusive control of the appliances, that according to common experience, until otherwise explained, the machinery would not have started, nor the accident occurred, except for some defect in the belting or appliances used in starting the rope drive or in the proper use of them, arising from the negligence of either himself or his servants. *Ryan* v. *Fall River Iron Works Co.*, *ante*, 188, 191, 193, and cases cited. It has been said, that " the happening of an accident if it is one that the exercise of ordinary care would ordinarily prevent, is some evidence of negligence." *Mahoney* v. *New York & New England Railroad*, 160 Mass. 573, 579.

The issue of the plaintiff's due care also was for the jury. The power was furnished and used as a whole, and, when it was withdrawn, no part of the machinery would be left in operation. His carefulness or want of it is to be measured by the conditions existing at the time. A belt connecting the countershaft of the moulding machine with the main belt had become partially unlaced, and, after the power had been discontinued and the machinery at rest, the plaintiff, discovering this condition, began

to put in a new lacing. It could have been found from his experience in the management of the shop, that the rope drive regularly ceased running each working day at six o' clock in the evening and did not start again until the next morning. The only time in which repairs of this nature could be made was when the machinery was idle, and, as he had no reason to apprehend that the usual practice would be disregarded, his conduct, which rested on this assumption, cannot be said as matter of law to have been negligent, even if, having regard for every possible contingency, he might while at work have slipped the belt from the pulley to the shaft itself. It was plain enough from his evidence, as well as from the testimony of the expert engineer, that, if the belt hung loosely on the shaft, to relace it properly would be practically impossible, and that he was doing the work in the ordinary way. *Droney* v. *Doherty*, 186 Mass. 205. *Wagner* v. *Boston Elevated Railway*, 188 Mass. 437, 441, and cases cited. Nor is the further contention of the defendant, that the plaintiff's failure to equip the shaft with tight and loose pulleys must be deemed conclusive evidence of his contributory negligence, tenable. The expert testified, that the absence of tight and loose pulleys by which main belts could be shipped was customary, and practically their use for this purpose had become obsolete. If believed, this evidence would warrant a finding that the mechanical equipment was neither defective nor deficient.

By the terms of the report the verdict ordered for the defendant must be set aside, and the case is to stand for trial.

*So ordered.*