BERNARD J. RUDDY *vs.* GEORGE F. BLAKE MANUFACTURING COMPANY.

Suffolk.   January 3, 1910. — February 24, 1910.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Negligence,* Employer's liability.   *Agency,* Scope of employment.   *Pleading, Civil,* Declaration.

Where a part of a machine which is operated by compressed air starts into motion of itself, when if it was in proper condition it would remain stationary, and in thus moving causes an injury to a workman employed by the proprietor of the machine to work in connection with it, in an action at common law by the workman against his employer for his injuries thus caused, the fact of the automatic starting of the portion of the machine, if unexplained, tends to show that the

apparatus in some way had become defective, and, if this fact is supported by evidence that for some time before the day of the accident the part of the machine which thus started into motion had been seen to be working irregularly and badly and that notice of its condition had been given to the defendant's superintendent, there is evidence for the jury of negligence on the part of the defendant.

In an action by a workman employed in a foundry against his employer, for personal injuries sustained by reason of one of his hands being caught and crushed between a car about which he was working and the door of an oven, it appeared that the plaintiff worked in a part of the defendant's foundry called the core room, where there were six or eight ovens side by side used for the baking of cores, that the cores were made of sand mixed with flour and other substances and were shaped to go inside of moulds so that in making hollow castings the molten metal might be poured in between the mould and the core, that the cores were mixed and put in shape in a part of the core room which was at a considerable distance from the ovens, that when this had been done they were carried by the workmen to the place where the ovens were, and were placed by the workmen upon cars, and that when the cars were loaded they were run into the ovens, where the cores received the necessary baking, that on the day of the accident a core broke while it was being carried from the moulding department to the pasting department, and that the superintendent of the core room said to the plaintiff, " there is a main core for a steam cylinder coming back, that broke in rolling off, and I want you to get it pasted as quick as you can and into the oven for the day's heat." It was undisputed that from the nature of the break and the temperature of the core great care would be necessary to adjust and keep the parts together until it could be placed on the car and run into the oven, where the heat would cause the parts to fuse and adhere firmly. The accident occurred while the plaintiff was obeying this order, and the defendant contended, that it was not liable, because the plaintiff in undertaking to run the car into the oven was a mere volunteer and was not acting within the scope of his employment. *Held,* that the acts of the plaintiff in accompanying the core to the oven were necessary for its safe carriage, and were within the scope of the order, which it was his duty to obey.

In an action at common law by a workman against his employer for personal injuries sustained while in the employ of the defendant, a count alleging a defect in a machine in connection with which the plaintiff was working is not inconsistent with another count for a failure of the defendant to give notice to the plaintiff of the danger incidental to the use of the defective machine.

In an action at common law by a workman for personal injuries sustained while in the employ of the defendant, if the plaintiff shows that a representative of the defendant ordered him to perform work which involved the use of a defective machine without giving him any warning or information of a concealed danger owing to such defect, of which the plaintiff could be found to have been ignorant but of which the defendant's representative knew or should have known, there is evidence for the jury of negligence on the part of the defendant.

In an action at common law by a workman against his employer for personal injuries alleged to have been caused by a part of the machine in connection with which the plaintiff was working starting of itself, when if it had been in proper condition it would have remained stationary, if there is evidence that a fellow servant of the plaintiff, with the plaintiff's assistance, attempted to start this part of the machine with bars or attempted to use this part of the machine after he knew that it was not in repair, this does not deprive the plaintiff of his

right to go to the jury, if there is other evidence warranting a finding that the proximate cause of the automatic movement of the part of the machine was a defect in its mechanism, of which the defendant ought to have known and of which the plaintiff did not know and was not warned.

Tort for personal injuries sustained by the plaintiff while in the employ of the defendant at its foundry at East Cambridge on October 14, 1903, by reason of one of his hands being caught and crushed between a car about which he was working and the door of an oven, with two counts, both at common law, the first alleging that the plaintiff's injuries were caused by reason of the negligence of the defendant, through its agents and servants, in failing to supply him with safe and suitable apparatus, tools and appliances for the performance of the work upon which he was engaged, and the second alleging that his injuries were caused by reason of the negligence of the defendant, through its agents and servants, in failing to give him sufficient warning of the dangers incident to the work which he was performing, and that the defendant, through its agents and servants, knew, or ought to have known of such dangers, but that the plaintiff was wholly ignorant of such dangers.    Writ dated April 14, 1904.

In the Superior Court the case was tried before *Bond,* J.

At the trial it appeared that, at and before the time of the accident, the plaintiff was in the employ of the defendant, and that the defendant had in the part of its foundry known as the core room six or eight ovens side by side, which were used for the baking of cores.    These cores were made of sand mixed with flour and other substances, and were shaped to go inside of moulds, so that the molten metal might be poured in between the mould and the core in making hollow castings.    The cores were mixed and put in shape in another part of the core room at a considerable distance from the ovens.    After this was done, they were carried by the workmen to the place where the ovens were.    If small and light they were carried by hand or on trucks, but if large and heavy they were carried by movable cranes.    Upon reaching the place where the ovens were they were placed by the workmen upon carriages or cars, and when the carriages were loaded they were run into the ovens, where the cores received the necessary baking.

The ovens were built of brick and each had a large doorway

opening toward the carriage. This doorway was about six or seven feet wide and eight or nine feet high. The oven was nine or ten feet deep. The carriage was of iron and was supported by four wheels or trucks which ran on iron tracks or rails, leading into the oven. The carriage was nine or ten feet long and six or seven feet wide. It consisted of an iron framework resting on the wheels or trucks, and supporting two iron platforms, one above the other, made of iron slats or rails, upon which the cores were placed. At each end of the carriage was attached a large iron door, of a proper size to shut up against the doorway of the oven and close it. When the carriage was drawn out of the oven as far as it would go, the iron door upon the end of the carriage nearest the oven came up against the inside of the doorway, thus closing it. When the carriage was run into the oven as far as it would go the iron door at the other or outer end came up against the outside of the doorway, closing it. The doorway thus was closed at all times by one or the other of the doors attached to the ends of the carriage, except while the carriage was being moved out or in.

The carriage was operated by compressed air, the mechanism for doing this being as follows: A piston rod was bolted firmly to the end of the carriage farther from the oven. This piston rod ran into a cylinder where a piston head was attached to it, the length of the rod and the length of the cylinder being such as to give the piston a backward and forward stroke equal to the entire length of the carriage. The bore of the cylinder was eight inches in diameter and the piston head was fitted closely into this by leather packing. The piston rod fitted closely the head of the cylinder towards the carriage, and was made tight by packing.

Compressed air was let into either end of the cylinder through tubes. When the air was let into the end of the cylinders farther from the carriage it drove the piston forward, pushing the car into the oven. When the air was let into the other end of the cylinder it drove the piston backward, pulling the carriage out from the oven. Valves, operated by hand, permitted the workman operating the carriage to let the air into or out of the cylinder at either end, at will. These valves were on the face of the oven wall, near the doorway, within convenient reach.

The tubes through which the air was let into the cylinder were one inch in diameter.

Upon the ends of the cylinder there were also pet cocks three quarters of an inch in diameter, through which, when opened, the compressed air in the cylinder could escape. The air was compressed by the engine into tanks or holders, which were in the engine room some distance away. From these tanks it was carried to the carriages, above described, as well as to many other machines in different parts of the foundry by tubes. There were three of these compressed air tanks ordinarily in use, but there was evidence tending to show that only two of them were in use on the day of the accident, the other being under repair.

The plaintiff testified : " I am somewheres around fifty years old, and had worked for the last thirty years off and on as a core maker. I have worked in foundries most of the time for thirty years. Before I came to work for the defendant I had worked for the Slater Engine Company, in Warren, Massachusetts. I had charge of the core room there about five years. I worked at five or six different foundries before I went to the defendant's, — in most of them at core making. In the places I worked before the defendant's, they had ovens for baking cores, but the cores were put into the ovens by hand, or if we could not shove them in by hand we had to use a bar. The cores are made of a sand mixture, and we use molasses or stale beer with flour or rye meal to make the sand stick together. After the cores are made, they are dried and put in the oven. Then they are taken out and pasted. If the core is hot enough so you can paste it, it will dry the blacking and there is no need of putting it back again ; but if the core is cold they generally put it back.

" This core was what we call a main core, for a steam cylinder. I would take it to be about twenty or twenty-four inches in diameter. It was round, with a small end which extended out from it about six or eight inches. It was about the size of a flour barrel, but straight, and the small projection led out from the centre of each end. I had nothing to do with making the core. I first saw it when it came back.

" I had charge of what they call the pasting department of the core room. I had nothing to do with making cores at that time. I had worked at core making from the latter part of July until

some time in September.  For about a month before the acci-
dent I had charge of the pasting.  There were five or six men
under me."

The evidence in regard to the happening of the accident is
described in the opinion.

At the close of the evidence, the defendant asked the judge
for twenty-six rulings or instructions.  Among those which were
refused by the judge were requests to rule that upon all the evi-
dence the plaintiff was not entitled to maintain his action, that
the plaintiff was not entitled to maintain his action on the first
count, and that he was not entitled to maintain it on the second
count.  The fourth instruction requested by the defendant,
which it was stated in the bill of exceptions that the judge gave
in substance, was that the defendant could not be held responsi-
ble in this action for any negligence of James O'Leary, a fellow
workman of the plaintiff who is mentioned in the opinion.  The
twentieth and twenty-first instructions requested, the exceptions
to the refusal of which were not argued by the defendant, were
as follows:

" 20.  Upon the evidence in this case, unless the jury find that
the valve used for shutting off the air pressure was in a leaky
and defective condition, they would not be warranted in finding
that there was a defect in the machine which caused the injury
to the plaintiff.

" 21.  In order to entitle the plaintiff to maintain his action
upon the first count, the jury must be satisfied by a fair prepon-
derance of the evidence that the valve by which O'Leary at-
tempted to shut off the air pressure, was in a leaky condition and
that this leaky condition of the valve caused the injury to the
plaintiff."

With the exception of the fourth instruction requested, the
judge refused to give any of the instructions requested by the
defendant except so far as they were incorporated in a portion
of his charge set forth in the bill of exceptions.

Near the beginning of the portion of the charge thus set forth
was the following: " The plaintiff must show by a fair preponder-
ance of the evidence that at the time he was injured he was act-
ing in the line of his duty as an employee; that in all which he
did which related to his injury he was in the exercise of due

care ; that the accident was not due to some risk or danger which he assumed while so employed, and that his injury was due to the failure of the employer to perform the duties imposed by law upon the employer for the safety of the plaintiff ; and if he fails to satisfy you upon either one of these propositions, then he is not entitled to recover."

The portion of the charge set forth concluded as follows : " So that you will consider here fully all the evidence, and say whether or not the plaintiff has made out all these different propositions. I have repeated to you the propositions twice, so that I think you will be able to keep them all in mind : Whether or not he was acting in the line of his duty, whether he was in the exercise of due care, whether it was a danger that he knew of and assumed when he was working, and whether or not he has satisfied you that this injury to him was caused by a failure of the defendants to perform the duty which the law imposed upon the defendants with reference to the safety of the plaintiff when he was doing his work. If you say that he has made out all these, then he is entitled to recover. If he has not made them all out, then he is not entitled to recover, and you must find for the defendant."

At the close of the charge the defendant further excepted to that portion of the charge in which the judge " charged the jury in substance that when an appliance fails to work in the way it was intended to work, when used as it was intended to be used, that that is some evidence that the machine is in a defective condition, and some evidence of negligence in some person not keeping it in repair."

The judge submitted the case to the jury, who returned a general verdict for the plaintiff in the sum of $3,500. The defendant alleged exceptions.

The case was submitted on briefs.

*G. L. Mayberry,* for the defendant.

*D. H. Coakley & R. H. Sherman,* for the plaintiff.

BRALEY, J. It was the defendant's duty to furnish suitable appliances for the plaintiff's use in the performance of his work, and to keep them in proper repair. In the management of its business, while the supervision of details could be left to competent subordinates, this requirement could not so be delegated as

to relieve the defendant from responsibility for injuries caused to its servants by defective permanent machinery or appliances, where by the exercise of reasonable diligence it should have known of and remedied the defect. *Rogers* v. *Ludlow Manuf. Co.* 144 Mass. 198. *Feeney* v. *York Manuf. Co.* 189 Mass. 336. *Finnegan* v. *Winslow Skate Manuf. Co.* 189 Mass. 580. *Donahue* v. *C. H. Buck & Co.* 197 Mass. 550.

The car which caught the plaintiff's hand and pinned it against the wall of the heated oven was operated by compressed air, admitted to the cylinder, and controlled by a valve. If in proper condition, it moved in or out of the oven at the will of the operator. After the plaintiff had mended the broken core it was placed on the car, and preparations were made to run the car into the oven, where the core was to be baked. The air having been turned on, the car started, but instead of moving steadily forward, after going a short distance it stopped. The air was then turned off, and the pet cock at the end of the cylinder was opened, and bars were used under the wheels to put the car in motion, when it suddenly shot ahead, causing the accident. Upon plenary evidence not only from the plaintiff's fellow workmen, who were familiar with the use of the car, but also from experts who were fully acquainted with its mechanism, the car should have remained stationary after the air had been shut off with the pet cock open. But, these precautions having been taken, and the car having been operated in the usual way, the fact that it automatically started furnished evidence which unexplained tended to prove that the apparatus in some way had become defective. *Ryan* v. *Fall River Iron Works Co.* 200 Mass. 188, 190, 191. *Silverman* v. *Carr*, 200 Mass. 396, 398.

The twentieth and twenty-first requests have not been argued, but if there was evidence that a leaky or defective valve would be a sufficient cause of the accident, the plaintiff was not limited to proof of this defect. *Cahill* v. *New England Telephone & Telegraph Co.* 193 Mass. 415, 418, and cases cited. The jury might have been satisfied that, unless the apparatus controlling the motive power was out of order, the car would not have moved. *Ryan* v. *Fall River Iron Works Co., ubi supra. Silverman* v. *Carr, ubi supra. Gillis* v. *Cambridge Gas Light Co.* 202 Mass. 222. It appeared, moreover, that for some time before the day

of the accident the car had been observed to work irregularly, or as described by the assistant foreman, " the carriages were working very badly. . . . they were bucking," and notice of their condition had been given to the defendant's superintendent of the foundry.   The question of the defendant's negligence under the first count was properly left to the jury.   *Finnegan* v. *Winslow Skate Manuf. Co.* 189 Mass. 580, 582.   *Donahue* v. *C. H. Buck & Co.* 197 Mass. 550.

Under the second count the negligence of the defendant is alleged to consist in setting the plaintiff to perform work of whose dangers he was ignorant, but of which the defendant was informed, without giving him any warning of the perils of his position.   By his contract of employment the plaintiff worked in the pasting department of the core room, where his duties required him to see that cores after having been baked were properly pasted and measured, but he was not required ordinarily to assist in operating cars, or to attend at the ovens.   On the day of the accident a core while being carried from the moulding to the pasting department broke, and O'Donnell, the superintendent of the core room, said to the plaintiff, " there is a main core for a steam cylinder coming back, that broke in rolling off, and I want you to get it pasted as quick as you can and into the oven for the day's heat."   It was undisputed that from the nature of the break and the temperature of the core great care would be necessary to adjust and keep the parts together until it could be placed on the car and run into the oven, where the heat would cause the parts to fuse and adhere firmly.   In obeying this order, the defendant contends, that under each count it is not liable, because the plaintiff was a mere volunteer.   He had been employed by O'Donnell, to whose direction and control he was subject, and who acted as the representative of the defendant in the management of the core room and the preparation of the cores for use, which included annealing.   *Feeney* v. *York Manuf. Co.* 189 Mass. 336, 339.   *Reardon* v. *Byrne,* 195 Mass. 146.   *Gilman* v. *Eastern Railroad,* 13 Allen, 433. *Cooney* v. *Commonwealth Avenue Street Railway,* 196 Mass. 11. The jury could find that the acts of the plaintiff in accompanying the core to the oven were necessary for its safe carriage, and were within the scope and exigency of the order.   It appeared,

that the superintendent knew or could be found to have known of the bucking of the cars, and that if the apparatus supplying the compressed air was out of repair, the plaintiff in obeying his instructions, might be exposed to great danger.   In *Rice* v. *King Philip Mills*, 144 Mass. 229, 237, Field, J., said, " If the master knew, or under the circumstances ought to have known, that a machine in use was out of repair and dangerous, it was his duty to see that it was put in proper repair, or to warn those using it of the danger, if they were ignorant of it."   A count for defective machinery is not inconsistent with a count for failure to give notice to an employee of the danger which may arise from using it, if it appears that he is ignorant of its condition.   The risk is an extraordinary one which the servant does not assume, unless it is obvious, or his attention has been called to it.   *Ciriack* v. *Merchants' Woolen Co.* 151 Mass. 152.   The duties are alternate. Suitable appliances must be provided, but, if they are not furnished or become defective, the master must warn or instruct his servants who use them, where through inexperience, want of capacity, or because the danger is concealed, they are not aware of the risks to which they may be exposed.   *Haggblom* v. *Winslow Bros. & Smith Co.* 198 Mass. 114.   *Byrne* v. *Learnard*, 191 Mass. 269.   The defendant could act only by subordinates, whom it had clothed with authority to carry on the different departments. *Gilman* v. *Eastern Railroad Co.* 13 Allen, 433.   *Feeney* v. *York Manuf. Co.* 189 Mass. 336, 339.   To direct the performance of work which involved the use of defective machinery, without giving any warning or information as to the danger of which the plaintiff could be found to have been ignorant, but of whose unsuitableness the defendant's representatives either knew or should have been aware, would warrant a finding by the jury of its negligence.   *Ferren* v. *Old Colony Railroad*, 143 Mass. 197. *Rice* v. *King Philip Mills*, 144 Mass. 229.   *Byrne* v. *Learnard*, 191 Mass. 259.   *Reardon* v. *Byrne*, 195 Mass. 146.

Nor could it have been ruled as matter of law that the plaintiff assumed the risk, or by his own want of care contributed to the injury.   The evidence, if believed, very plainly showed no previous knowledge of defects which were not obvious, but concealed, or of any information which should have led him to anticipate, that the car might work improperly.

If O'Leary, the plaintiff's fellow servant, with the plaintiff's assistance, attempted to start the car with bars, or to use it after he knew it was not in repair, the defendant would not be responsible for his acts.   But the jury, who were accurately instructed upon this point, would be warranted in finding upon the evidence that the proximate cause of the sudden movement of the car was the defective mechanism.   *Hale* v. *New York, New Haven, & Hartford Railroad,* 190 Mass. 84.   *Butler* v. *New England Structural Co.* 191 Mass. 397.   *Doe* v. *Boston & Worcester Street Railway,* 195 Mass. 168.

The defendant presented a large number of requests for rulings of which the judge gave the fourth in substance, but declined to give the other requests except as they were contained in the charge.   It is unnecessary to take them up in detail. For reasons previously stated they were properly refused, and the instructions given, to a part of which the defendant also excepted, were correct and appropriate.

*Exceptions overruled.*