MAURICE J. TOOHY *vs.* MARGARET McLEAN.

Middlesex. March 20, 1908. — September 4, 1908.

Present : KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Negligence. Pleading, Civil,* Declaration. *Elevator.*

In an action by a tailor's boy against the owner of a building used as a students' dormitory, for personal injuries caused by the sudden starting of an elevator as the plaintiff was about to enter it from the fourth floor of the building, after he had delivered a suit of clothes at the room of a student and had returned to the elevator with both arms laden with clothes for other customers, before the elevator boy, who had left the doorway of the elevator open and then had gone to attend to the wants of a tenant, had returned, the declaration contained an allegation that the plaintiff "was injured by reason of the negligence of the defendant and her servants in managing, operating and controlling said passenger elevator." The janitor of the building was called as a witness and was asked by the plaintiff, "Were there instructions in reference to leaving the elevator ? " The plaintiff's counsel stated that the plaintiff's contention was, that it was "a negligent way to control an elevator to go away and leave the gate open." The judge said, "It is not open on your pleadings to rely on that," and excluded the question. *Held,* that the exclusion was error ; that the allegation of the declaration above quoted, included negligence of the elevator boy in being absent from the elevator when his presence in it was required for properly managing, operating and controlling it, and that the plaintiff should have been allowed to prove the instructions given by the janitor to the elevator boy in regard to leaving the elevator.

In an action by a tailor's boy against the owner of a building used as a students' dormitory, for personal injuries caused by the sudden starting of an elevator as the plaintiff was about to enter it from the fourth floor of the building, after he had delivered a suit of clothes at the room of a student and had returned to the elevator laden with clothes for other customers, there was evidence warranting findings that the elevator was a small one, its doorway being only two feet wide,

that it was operated by water power and was controlled by means of a lever, which worked in a slot that was set with teeth to hold the lever where it was put, that the lever was released from the teeth by raising a clutch in its handle, that when the plaintiff had entered the elevator the elevator boy took him to the fourth floor, and went with him from the elevator to open the door of the room where the plaintiff was to deliver the suit of clothes, that the elevator boy then was called to the next room to take out an empty trunk and went there, that the elevator had been leaking, and the elevator boy had left the lever outside the teeth and a little forward of the centre of the slot, to offset the leakage, that this was the proper if not the necessary way to keep the elevator still while there was a leak, that an elevator of this kind when leaking and left in this way might appear to be perfectly still, that in such a case it would move very slowly and its movements would be perceived only after an interval of time, that the lever was at the left hand side of the doorway of the elevator as one entered it, that if the lever was pushed forward quickly to its full length the elevator would go up about three hundred feet in a minute, that when the plaintiff returned to the elevator the elevator boy was not there, that, seeing the doorway open and the elevator apparently at rest, he undertook to enter it that, being encumbered by from six to nine pieces of clothing which he was carrying on both arms, he could not go straight through the two foot doorway into the elevator, and tried to get in by entering it sideways, that it was somewhat dark at the entrance of the elevator at the time, that the elevator appeared to be about four inches above the floor and to be still, that as the plaintiff attempted to enter it sideways he was, according to his own narration, "struck backward and pitched underneath" and into the elevator well, or as another witness testified, the elevator went down and then came up quickly and the plaintiff went out and down when it came up. *Held*, that there was evidence of negligence on the part of the defendant in operating a leaky elevator, in which it was necessary to leave the lever outside the teeth and forward of the centre of the slot to keep the elevator still, with the result that if the lever was pushed the full length forward or backward it would send the elevator up or down at the rate of three hundred feet a minute, that it might have been found that the elevator boy knew that the plaintiff was going back to the street by the elevator with his arms laden with clothes, and that knowing this he left the lever where it would be pushed backward or forward or both, if caught by the clothes on the plaintiff's arms as he was entering the narrow doorway, that the elevator boy left the doorway of the elevator open and went to the room where he was called to attend to the wants of the tenant, and stayed away so long that he knew or if he had exercised due care ought to have known, that the plaintiff would have returned to go down in the elevator, that the negligence of the elevator boy was in law the negligence of the defendant, and that these facts would constitute negligence, if the plaintiff might be expected to enter the elevator in the absence of the elevator boy, that such an act was reasonably to be expected, and therefore that the accident could be found to have been the probable consequence of the defendant's negligence. *Held, also,* that there was evidence that the plaintiff was in the exercise of due care, as he well might have thought that the elevator boy when he left the doorway open intended him to enter the elevator, and there was nothing to show that the plaintiff knew anything about the working of the lever or the way in which it had been left by the elevator boy, so that there was no evidence that he knew or ought to have known that there was any danger in entering the narrow elevator doorway with clothes on both arms.

TORT by a minor, through his next friend, against the owner of a students' dormitory in Cambridge called Ridgely Hall, owned by the defendant, for personal injuries caused by the sudden starting of an elevator as the plaintiff was about to enter it from the fourth floor of that building, in the manner stated in the opinion. Writ dated June 27, 1906.

In the Superior Court the case was tried before *Hardy*, J., who at the close of the plaintiff's evidence ordered a verdict for the defendant. The plaintiff alleged exceptions.

*F. J. Carney*, for the plaintiff.

*W. H. Hitchcock*, for the defendant.

LORING, J. The facts which the jury were warranted in finding in this case were as follows:

The plaintiff, a minor, was a tailor's boy. Among other things it was his duty to collect clothes to be pressed and to deliver them when that had been done. Between four and five o'clock in the afternoon of April 25 he came to Ridgely Hall, owned by the defendant, to deliver a suit of clothes to a student living on the fourth floor. He went up in the elevator. This elevator was a small one; the floor of it was about four feet by four and one half, and its doorway was two feet wide. On the left hand of one entering the elevator and at the front end of that side, there was a lever by which the elevator was operated. The elevator was of the kind known as a plunger elevator. It consisted of a car on the top of a piston set in a cylinder. The elevator was raised by water being let into the cylinder beneath the piston, and lowered by the water being let out. The valves by which the water was let in and out were operated by the lever already spoken of. This lever was about two and one half feet high, and worked in a slot about two inches wide and eight or ten inches long. On the side of this slot was a set of teeth to hold the lever where it was put. The lever was released from the teeth by raising a clutch in the handle of the lever.

The plaintiff had some nine or twelve pieces of clothing with him when he reached Ridgely Hall on the afternoon in question. One suit was to be delivered at room 43 on the fourth floor. The plaintiff entered the elevator, the elevator boy took him to the fourth floor, left the elevator with him and opened the door of room 43 for him. The elevator boy then went to room 42, at

the request of the tenant of that room, to take out an empty trunk, having left the lever a little forward of the centre and outside the teeth, with the clutch up and the gate of the elevator well open.    The plaintiff placed the nine or twelve pieces of clothing on the railing of the balusters, took the suit for the tenant of room 43, put it on the bed in his room, and returned to the hall.   He took up the remaining six to nine pieces, putting the trousers over his right arm or shoulder, running his left hand through the arm holes of the waistcoats and putting the coats over his left arm.    Seeing the gate open and the elevator apparently at rest he undertook to enter the elevator.    Finding that with the six to nine pieces of clothing he could not walk straight through the two foot doorway into the elevator, he tried to get in by entering it sideways.    It was somewhat dark at the entrance of the elevator at the time.    The elevator appeared to be about four inches above the floor and to be still.    As we have said, he undertook to enter sideways, and " the next thing he knew he was struck backward and pitched underneath, that is, under the elevator into the elevator well," to quote his own words.

Another witness testified that the elevator went down and then came up quickly, and that the plaintiff went out and down when it came up.   There was evidence that if the lever were pushed forward quickly to its full length, the elevator would go up about three hundred feet in a minute.

The elevator had been leaking before the time in question, and the elevator boy had left the lever outside the teeth and a little forward of the centre, to offset the leakage ; and this was a proper if not the necessary way of keeping the elevator still while there was a leak.   An elevator of this kind, when leaking, might appear to be perfectly still; in such a case it moves very slowly, and the evidence of its movements is attained only after an interval of time.

From these facts the jury could have inferred that the clothing carried by the plaintiff caught in the lever and caused the elevator to go up, or to go down and then up ; and that the plaintiff was shot out of it by the quickness with which it went up, or down and up.

There is a preliminary question on which the ruling made at

the trial was in our opinion wrong. The judge ruled that under the declaration in the case at bar it was not open to the plaintiff to rely on the absence of the elevator boy from the elevator in making out negligence on the part of the defendant. The negligence of the defendant alleged by the plaintiff in the first count of the declaration is that " he [the plaintiff] was injured by reason of the negligence of the defendant and her servants in managing, operating and controlling said passenger elevator." That includes negligence in the elevator boy's being absent from the elevator when his presence in it was required in properly managing, operating and controlling it. It follows that the plaintiff should have been allowed to prove the instructions given to the elevator boy.* That is settled in this Commonwealth by *Stevens* v. *Boston Elevated Railway*, 184 Mass. 476.

The initial negligence on the part of the defendant was in operating a leaky elevator. The jury were warranted in finding that this made it necessary to leave the lever forward of the centre to keep the elevator still, and at the time in question to leave the lever between two teeth and the clutch pulled up. The result was that if the lever was pushed the full length forward or backward it would send the elevator up or down at the rate of three hundred feet a minute. But the defendant's negligence did not stop there ; for the negligence of the elevator boy is in law the negligence of the defendant. It might have been found that the defendant's elevator boy knew that the plaintiff was going back to the street on the elevator with his arms loaded down with clothes, and that knowing this he left the lever where it would be pushed backward or forward, or both, if caught by the clothes on the plaintiff's arms while entering this narrow doorway two feet wide, and that he left the gate of the elevator well open and went to room 42 to attend to the wants of the tenant of that room, and stayed away so long that he knew, or

---

* The witness was the janitor of the building. The question asked him by the plaintiff and excluded by the judge was " Were there instructions in reference to leaving the elevator ? " The counsel for the plaintiff said, " Our contention is, it is a negligent way to control an elevator to go away and leave the gate open." The judge said, " It is not open on your pleadings to rely on that."

ought to have known if he had exercised due care, that the plain-tiff would have returned to go down in the elevator.

. We are of opinion that these facts could have been found to constitute negligence on the part of the defendant, if the plaintiff might be expected to enter the elevator in the absence of the elevator boy.   We are further of opinion that that was to be expected and therefore that the accident was the probable consequence of the defendant's negligence.   The case comes within *Turner* v. *Page*, 186 Mass. 600, and similar cases, and not within *Stone* v. *Boston & Albany Railroad*, 171 Mass. 536, and cases of that kind.

We are also of opinion that the jury could have found that the plaintiff was not negligent.   The plaintiff might well think that the elevator boy intended him to enter the elevator when he left the gate open.   There is no evidence that the plaintiff knew anything about the working of the lever, or how it had been left by the elevator boy.   In short, there was no evidence that he knew or ought to have known that there was any danger in entering the narrow elevator doorway with clothes on both arms.

The entry must be

*Exceptions sustained.*