JAMES M. BUTLER *vs.* NEW ENGLAND STRUCTURAL COMPANY.

Suffolk.  March 28, 1906. — April 3, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, BRALEY, & SHELDON, JJ.

*Negligence,* Employer's liability.  *Proximate Cause.*

In an action by a workman against his employer for injuries from the boom of a derrick falling upon him, if there is evidence warranting a finding that the accident was caused by a defect in the derrick, and there also is evidence from which the jury might infer that the accident was caused by the negligence of a fellow servant of the plaintiff, the question whether the defective and unsafe condition of the derrick was the proximate cause of the plaintiff's injury is one for the jury, taking all the circumstances into account under proper instructions from the presiding judge as to the meaning of " proximate cause."

TORT for personal injuries, with a first count at common law alleging that the plaintiff was injured by reason of the negligence of the defendant in putting him at work in a dangerous place and upon a defective machine, to wit, a defective derrick, and by reason of the defendant's negligence in hiring incompetent servants, and a second count under the employers' liability act for injuries caused by a defect in the condition of the ways, works or machinery of the defendant.  Writ dated July 23, 1900.

In the Superior Court the case was tried before *Bishop*, J.

The plaintiff introduced evidence tending to show that on the morning of the accident, May 1, 1900, he, with two other men, one Trickett and an Italian, were told by one Chandler, the foreman, to go around into the stock yard and work; that when they came out to the stock yard one Devoe, who had charge of the stock yard, asked them what they were out there for, and they said they were sent there, and he then told them to move some iron plates which were lying near, where filling was to be done. As Devoe said this, he directed their attention to the plates and the derrick. Immediately after telling the men this, Devoe turned away and went to speak with Chandler, some seventy-five feet away, who called him to tell him about some other work. Some of the iron plates were an inch and a quarter thick by eight or ten inches wide and from fifteen to thirty feet long, and would weigh one hundred or two hundred pounds apiece. The men then went to work to move the plates with the derrick, Trickett and the Italian turning the cranks to wind up the hoisting gear, one on each side of the mast, and Butler, the plaintiff, pulling at the tag rope to get the boom around so that the fall would be over the plates. There was an iron spreader to be fastened on the end of the boom, on which the plates were to be moved. Trickett left the crank, to go and get the plates and spreader adjusted, leaving the Italian alone at his crank, and the boom fell upon the plaintiff. The plaintiff introduced evidence tending to show that it fell because there was no pawl or catch to hold it after being wound up and to prevent unwinding, and contended that if there had been a pawl or catch, it would have fallen into place upon the cogs and prevented the accident. The plaintiff was found lying on the plates.

It appeared in evidence that a wooden stick was used with this derrick to prevent the drum, for raising and lowering the boom, from unwinding. The stick was about four feet long and about two by four inches thick, and was of oak or some kind of hard wood. The usual way of putting the stick in to hold the boom was by putting it in between the spokes of the boom wheel, and then the wheel would turn around and the stick would come against the frame of the derrick and would be in a diagonal position, so that one end would be higher than the other. It was

in evidence that before the accident the stick was in between two of the spokes of this wheel.   There was evidence that the use of this stick was an insufficient and unsafe device.

The defendant introduced evidence tending to contradict the evidence of the plaintiff, and also set up in defence a release from the plaintiff, and there was evidence concerning the giving of this instrument and upon the question whether the plaintiff was of sound mind and understanding when it was executed, and whether it was executed under such circumstances as to be a valid and binding release.   It appeared that on May 14, 1900, about two weeks after the accident, while the plaintiff was at the hospital he signed a receipt for $500 from the defendant in full settlement and satisfaction for his injuries.   The plaintiff testified among other things that when this instrument was executed he had headaches all the time as the result of the injury, and had delusions, thinking that he was buried in a graveyard and was trying to dig the dirt off of him to get out, and thought somebody was pulling him down deeper into the ground, and also thought that he had lost the heel of one foot trying to drag it away from somebody, and testified, " Well, I thought, you know, by signing these papers that I could get out of there, there was such a load on me, and I thought when those papers was signed that I was all right, that I could get out of this grave."

The plaintiff's wife testified that when visiting her husband at the hospital after the accident he did not know her, nor her sister, nor his own sister for about two weeks and that he appeared " dopy like, stupid."   She further testified that the next day after her husband signed the receipt she visited him at the hospital and as the result of a conversation with him found a piece of paper under his pillow which was a check from the defendant for $500.   The plaintiff's sister testified, that she visited the plaintiff at the hospital on May 12, and that " he did not act himself, was stupefied, and would not talk with her ; looked kind of dazed and sleepy, stupefied."

The defendant asked the judge to rule as follows :

1.  Upon all the evidence the plaintiff cannot recover.

2.  There is no evidence that the plaintiff was of insufficient mental capacity to understand that he signed a release in full of claims against the defendant.

3. There is no evidence that the defendant failed to furnish suitable tools, instruments and materials for the plaintiff to work with.

4. There is no evidence that the unsuitableness of the machinery, the tools, instruments and materials was the proximate cause of the injury.

The judge refused to make any of these rulings. Among other instructions he cautioned the jury that the only ground under the declaration upon which they could render a verdict for the plaintiff was a defect in the machinery, to wit, the derrick, and if it should appear to the jury that the real cause of the accident was the negligence of those who were working with the plaintiff, the plaintiff could not recover, that the question was, " What is the proximate cause of the accident ? "   The judge explained the meaning of the word " proximate " in this connection in terms not objected to, and said that unless they found that the proximate cause, which was the direct, real cause and the effective thing that caused the occurrence, was that the machinery was defective, as alleged by the plaintiff, he could not recover.

The judge instructed the jury that there was no evidence to support the allegation in the first count of the declaration that the plaintiff was injured by the defendant's negligence in making an improper selection of fellow workmen, and that there was no evidence to support the second count of the declaration, and directed the jury to return a verdict for the defendant upon the second count.   He submitted the case to the jury upon the allegation in the first count that the machinery upon which the plaintiff was put to work was defective, and upon the question of the release.

On the second count the jury returned a verdict for the defendant as ordered by the judge.   On the first count the jury returned a verdict for the plaintiff in the sum of $5,000 ; and the judge at the request of the parties reported the case for determination by this court.   The terms of the reservation are quoted in the first paragraph of the opinion.

*S. A. Fuller,* for the plaintiff, was not called upon.

*J. Lowell, (G. McC. Sargent* with him,) for the defendant.

MORTON, J.   This is an action of tort to recover for personal injuries received by the plaintiff from the fall of a boom belong-

ing to a derrick on which he was working at the time of the accident. There was a verdict for the plaintiff and the case is here on report. "If the defendant's requests should have been given, judgment is to be entered for the defendant. Otherwise, judgment is to be rendered upon the verdict for the plaintiff." We think that the rulings requested were rightly refused.

The defendant does not seriously contend that the want of a pawl on the drum by means of which the boom was raised and lowered did not constitute or could not have been found by the jury to constitute a defect in the derrick. It is plain that the jury were warranted in finding, as they must have found, that the want of a pawl rendered the derrick defective, and that the oak stick and the manner in which it was used to keep the drum in place constituted an unsafe appliance. The defendant contends more earnestly that there was no evidence that the defect in the derrick was the proximate cause of the injury. There was no question but that the boom fell, and that it was its fall which caused the plaintiff's injuries. The defendant contends that for aught that appears the stick may have been displaced and the boom caused to fall by negligence on the part of one of the plaintiff's fellow servants; and that, if so, that was the proximate cause of the plaintiff's injury. But the fact, if it was a fact, that negligence on the part of one of the plaintiff's fellow servants may have contributed to the accident would not necessarily as matter of law relieve the defendant. The defective and unsafe condition of the derrick might still be found to be the proximate cause of the plaintiff's injury. *Lane* v. *Atlantic Works*, 107 Mass. 104; *S. C.* 111 Mass. 136. The question was one for the jury, taking all the circumstances into account, to pass upon, and was left to them under instructions as to what would constitute " proximate cause," which were not objected to.

The question whether the plaintiff was competent to execute the release relied on by the defendant, and understood what he was doing, also was a question for the jury. It could not be ruled as matter of law that there was no evidence that would warrant a finding that he was of unsound mind when it was executed.

*Judgment on the verdict.*