MICHAEL J. CONROY *vs.* G. W. AND F. SMITH IRON COMPANY.

Suffolk.   January 18, 1907. — February 28, 1907.

Present : KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Negligence.*

In an action by an employee of a construction company, engaged in doing the mason work for a large coal pocket, against an iron company, engaged at the same time in doing the iron work for the same coal pocket, for personal injuries from an iron beam falling upon him when it was being hoisted by means of a derrick furnished and operated by the plaintiff's employer, if there is evidence that the defendant's foreman wished to use the iron beam and fastened it to the chain to be hoisted and that the accident was due to his negligence in selecting a chain which manifestly was unfitted for this work, although proper ropes for holding the beam had been provided by the plaintiff's employer, and in adopting an improper method of fastening the beam to the chain, and there also is evidence that the defendant's foreman, in fastening the beam to the chain was acting for the defendant and within the scope of his employment, there being no contention that the plaintiff was not in the exercise of due care, the question of the defendant's liability is for the jury.

In an action by an employee of a construction company, engaged in doing the mason work for a large coal pocket, against an iron company, engaged at the same time in doing the iron work for the same coal pocket, for personal injuries

from an iron beam falling upon him when it was being hoisted by means of a derrick furnished and operated by the plaintiff's employer, there was evidence that the defendant's foreman, who was in charge of the iron work at the coal pocket and whose duty it was to select the iron beams for hoisting, attached the beam to the derrick by a chain which was an improper one for the purpose, that there were ropes called straps at hand, the purpose of which was to fasten a beam that was too small for the chain as this one was, and that the defendant's foreman made no use of these ropes. The foreman testified that, being desirous of having this beam hoisted, he told the tag man of the plaintiff's employer who was in charge of the derrick that he wanted the beam, that the tag man told him he was busy but that if the defendant's foreman "would hook on to the beam" he would hoist it for him, that the foreman then put the chain around the beam, and, while attempting to take two turns with the chain, told the tag man that he did not have chain enough and asked him to give him more, but that the tag man said that there was chain enough, that one turn was enough to put around the beam and refused to give him more chain, that thereupon the foreman took one turn around the beam, fastened the hook and said, "Go ahead," whereupon the tag man signalled to the engineer to hoist, that the engineer obeyed the order and the beam slipped from the chain and fell on the plaintiff. The judge, among other instructions, instructed the jury that if they found that the defendant's foreman asked for more chain and that the tag man of the plaintiff's employer did not give it to him and said that one turn was enough that would not be an excuse for the defendant's foreman. *Held*, that this instruction was correct, as, if the accident was due to the negligence of the defendant's servant or agent, the concurring negligence of the other contractor, if proved, would constitute no defence to the action.

TORT against the G. W. and F. Smith Iron Company for personal injuries while in the employ of the Morrill and Whiton Construction Company. Writ dated November 20, 1902.

On October 10, 1902, the same plaintiff brought an action against the Morrill and Whiton Construction Company, and the two cases were tried together in the Superior Court before *Holmes*, J.

The plaintiff offered evidence tending to show that he was injured at about ten o'clock in the forenoon of December 5, 1901. The defendant and the Morrill and Whiton Company were engaged in building a coal pocket at the State House in Boston, the construction company doing the mason work and the defendant doing the iron work. The plaintiff was about twenty-six years of age at the time of the accident and had been employed by the Morrill and Whiton Company about six months and upon this particular work about three weeks.

Upon the premises at the time of the accident were three derricks furnished by the Morrill and Whiton Company. Each of these derricks was provided with an engineer and a tag

man. By means of these derricks all the hoisting was done which was necessary to be done in the construction of the coal pocket. None of the workmen operating the derricks were employees of the defendant. At the time of the accident the plaintiff was at work near one of the derricks, and while he was so at work an iron beam about six feet in length weighing about one hundred pounds fell upon him, causing the injuries sued for. The evidence tended to show that the Morrill and Whiton Company provided a chain for the purpose of hoisting different kinds of material.

The plaintiff testified that he had worked as a stone and brick mason for about eleven years before the accident; that at the time of the trial in 1906 he was thirty-one years of age; that at the time of the accident he was laying a stone for the Morrill and Whiton Company; that he did not see the iron beam which struck him; that he had been working in the coal pocket about three weeks; that the derrick which hoisted the iron beams was in the centre of the coal pocket; that iron beams were scattered around in the bottom of the coal pocket; and that one Sears was the foreman for the defendant; that Sears did all the iron work there and was foreman over the iron workers that were there; that the plaintiff had seen him pick out the iron and tell " the tag man or whoever it was " where to go with it. He further testified that he had seen Sears hitch on iron beams before the accident; that he had seen him hitch on iron beams sometimes three or four times in a half hour and sometimes not for a couple of hours; that Sears had been doing this every day for about a month; that the iron men took orders from Sears; and that he had never heard any one give orders to Sears.

On cross-examination he testified that his people did the hoisting; that they furnished the derricks and had an engineer and tag men for the different derricks, and that the derrick was working nearly all day hoisting things; that one Olson did the work of tagging on the derrick which caused the accident; and that he heard the order given to the engineer by Olson before the accident happened. He further testified that Sears would go down from above, pick out the iron beams, put the chain on and tell them to hoist; that he had seen Sears make the hitch on I-beams.

On re-direct examination the plaintiff testified that he had never seen beams hoisted over the heads of workmen with only one turn of the chain around the beam; that the times when only one turn was used were when the beams were being lowered into the pit from the wagons; that this was always at the farther end of the pit from where the masons were working; that it was customary for the tag man to call out "heads up" when a beam was about to be hoisted over the heads of the workmen; that at the time of his accident no call or warning was given and he did not know that a beam was being hoisted; that he had his back toward the part of the pit where the beams were kept, and knew nothing about the approach of the beam until after it struck him.

Olson, called by the plaintiff, testified that he was in the employ of the Morrill and Whiton Company and was tag man on the derrick which was hoisting the iron beam that fell upon the plaintiff; that the beam was slippery; that there was ice on it and that it was newly painted; that Sears made the hitch around the iron beam; that in making the hitch the chain was passed around the beam once and the hook on the end of the chain hooked into that portion of the chain which ran from the tackle block on the derrick to the beam; that when the hitch was made Sears sang out to Olson "Go ahead"; that thereupon Olson signalled to the engineer to hoist; that the engineer obeyed the signal and hoisted the beam, and that while the beam was hoisting it slipped from the chain and fell.

The chain provided by the Morrill and Whiton Company for the purpose of hoisting the beam was made of links three inches in length. Testimony of two experts and of the father of the plaintiff was introduced by the plaintiff to the effect that the chain was an improper chain for the purposes to which it was put at the time of the accident in that the links were too long and would not sufficiently bind upon the beam while hoisting. The chain was provided by the Morrill and Whiton Company and none of the hoisting apparatus was provided in any way by the defendant.

One Prendergast, called by the plaintiff, testified that he had been an iron worker and rigger for nineteen years; that at the time of the accident he was operating one of the two derricks in

the coal pocket; that he was standing about forty feet from the plaintiff; that he saw the beam which struck the plaintiff as it was in the air; that it was fastened with a single hitch; that he saw Sears give orders where to put the iron, where to place it and what beam to hitch on to it; that Sears picked out the iron; that he had seen him hitch on iron beams.

Being asked whether there were any ropes or what are called straps on or near that coal pocket on the day of the accident, he answered that "there were lots of straps there"; that there were half a dozen straps; that the use or purpose of these straps was " to hitch on to such a load as that beam, that was too small for a chain." He further testified that the defendant put in the beams; that they were hoisted under the direction of Sears; that no one else ever gave any orders for the hoisting of the beams; and that Sears put hitches on the beams.

Sears, called by the defendant, testified that at the time of the accident he had been at work upon the job several days and had charge of the putting in place of the iron beams in behalf of the defendant; that all the hoisting was done by the Morrill and Whiton Company and that before the day of the accident Sears would point out to the tag man such beams as he desired to have hoisted and that the tag man would make a hitch around the beams and hoist them to such place as was designated by Sears; that before the accident Sears had never placed a chain around any of the I-beams; that upon the day of the accident the tag man Olson was upon the bank; that Sears was desirous of having the I-beam hoisted; that he told Olson that he wanted the beam; that Olson said that he was in a hurry and that if he, Sears, would hook on to the beam he, Olson, would hoist it for him; that Sears then put the chain around the I-beam and while attempting to take two turns with the chain told Olson that he did not have chain enough and asked him to give him more, but that Olson said that there was chain enough, that one turn was enough to put around the beam and refused to give him more chain, that thereupon Sears took one turn around the I-beam, fastened the hook and said " Go ahead." Sears further testified that for several days before the accident the employees of the Morrill and Whiton Company were unable because of the weather to do any mason work; that upon the day of the acci-

dent the weather was fit for laying brick and stone, and that the tag man Olson and the employees of the Morrill and Whiton Company were hurried about their work.

On cross-examination Sears stated that while upon the work he had given no instructions or orders in regard to hoisting; that he put on the single hitch because the tag man would give him no more chain, and that he wanted to take two turns as an extra precaution. He further testified that the chain used upon the day of the accident was the only chain provided by the Morrill and Whiton Company and that no sling or strap was seen by him at any time upon the premises.

Olson, called in rebuttal by the plaintiff, testified that he did not tell Sears that one turn around the iron beam was enough, and that he did not refuse to give Sears more chain.

At the close of the evidence the defendant asked the judge to rule that upon all the evidence the plaintiff was not entitled to recover against it. The judge refused to make this ruling, and submitted the case to the jury, and, among other instructions, instructed them in substance that if they found that Sears asked for more chain and that Olson did not give it to him, refused to give it to him and said that one turn was enough, that would not be an excuse for Sears.

The judge also gave the following instructions which were requested by the plaintiff:

"1. If the jury believe that the iron beam was fastened by the defendant's agents or servants in a negligent way, and that it slipped or fell by reason of such negligent fastening, this would warrant the jury in finding that the defendant was negligent.

"2. If the negligence of the defendant's servants or agents was an adequate cause of the accident, the concurring negligence of persons other than the plaintiff himself constitutes no defence to this action.

"3. The jury may find that Sears acted within the scope of his employment in 'slinging' the iron beams at the time of the accident if they believe that Sears was the defendant's foreman at the coal pit and did the slinging of the iron beam for the purpose of performing the defendant's work or contract and not for some private purpose of his own.

"5. If the jury find that Sears was the defendant's foreman at the coal pit at the time of the accident and had charge of the iron beams, and authority to designate the particular iron beam to be next hoisted into place by the derrick and to see that the iron beam was put into its proper position, and that he did the slinging of the beam which fell and struck the plaintiff, for the purpose of performing the defendant's work or contract, the jury would be warranted in finding that Sears was acting within the scope of his employment at the time of the accident."

The jury returned a verdict for the plaintiff in the sum of $3,550; and the defendant alleged exceptions to the rulings of the judge and to his refusal to order a verdict for the defendant.

The criticisms by the defendant's counsel of the instructions to the jury and the cases cited by him, which are referred to in the last paragraph of the opinion, were as follows:

The judge, in substance, instructed the jury that even if Sears, as he testified, asked Olson for more chain, and Olson refused to give it to him, and said that one turn was enough, this would not excuse Sears, and that the jury still might find him negligent. This the defendant submits was a prejudicial error. When Sears asked Olson for more chain and the latter had refused to furnish it, and had failed to make use of the straps or ropes that were furnished, there was nothing more that Sears could do but go ahead with the hoisting. His conduct in doing so was not only reasonable but was the only practical course open to him.

Sears had a right to rely on the knowledge and judgment of Olson as the one in charge of the derrick. It was Olson's duty to have oversight of the hoisting appliances, and the defendant's employees had a right to rely on his performance of that duty. Therefore, when he said that one turn of the chain was enough and refused to give more or to provide any other means for fastening the beam, Sears was entitled to accept this as proper and go ahead. From the method of work adopted, on Sears's evidence, as far as the hoisting was concerned, he was in the same position as a subordinate to the Morrill and Whiton men. He stands, therefore, in exactly the same position as an ordinary employee, who is entitled to assume that his superintendent or employer is taking the proper precautions required for the pro-

tection of his men.  *McKinnon* v. *Riter-Conley Manuf. Co.* 186 Mass. 155.   *Bartholomeo* v. *McKnight,* 178 Mass. 242.   *Burgess* v. *Davis Sulphur Ore Co.* 165 Mass. 71.   *Lynch* v. *Allyn,* 160 Mass. 248.

It follows, therefore, that on these facts the defendant was entitled to instructions that if Sears's story was believed he was not negligent and the plaintiff was not in such case entitled to recover against this defendant.   The instructions excepted to allowed the jury to find Sears negligent, even if they believed his story.   They therefore were erroneous.

*W. I. Badger,* for the defendant.

*C. Reno,* for the plaintiff.

SHELDON, J.   On the evidence a verdict could not have been ordered for the defendant.

The jury had a right to find that the work of hoisting the beams was done under the direction of Sears, the defendant's foreman ; that the accident was due to his negligence in selecting a chain which manifestly was unfit for this work, although proper straps for the purpose had been provided by the other contractor, and to find that there was negligence in the manner which he adopted of fastening the beam to the chain ; and that in what he did he was acting for the defendant and within the scope of his employment.   This issue was submitted to the jury with proper instructions, and they were expressly told that if the defendant was not concerned in the hoisting of the beam, and if what Sears did was merely a voluntary performance by him of part of the work of the Morrill and Whiton Company, then the defendant would not be liable.   The jury have passed upon this question, and we cannot revise their finding.   See *Hale* v. *New York, New Haven, & Hartford Railroad,* 190 Mass. 84 ; *Melvin* v. *Pennsylvania Steel Co.* 180 Mass. 196.   It has not been argued that the plaintiff was not himself in the exercise of due care.   *Meagher* v. *Crawford Laundry Machinery Co.* 187 Mass. 586.   *Smith* v. *Baker,* [1891] A. C. 325.

Nor do we find any error in the specific instructions that were given.   If this accident was due to the negligence of the defendant's servant or agent, the concurring negligence of the other contractor, if proved, would constitute no defence to this action.   *Butler* v. *New England Structural Co.* 191 Mass. 397, 401.

*Oulighan* v. *Butler*, 189 Mass. 287, 292.    *Murray* v. *Boston Ice Co.* 180 Mass. 165, 168.    *Boston Woven Hose & Rubber Co.* v. *Kendall*, 178 Mass. 232, 236, 237.

The instructions given required the jury, in order to return a verdict for the plaintiff, to find that Sears was acting within the scope of his employment by the defendant, and in no way had become the servant of the Morrill and Whiton Company. The criticisms made upon them by the defendant's counsel are not well founded, and the decisions cited by him are not applicable to the facts settled by the jury.

*Exceptions overruled.*