JAYME M. D'ALMEIDA, administrator, *vs.* BOSTON AND MAINE RAILROAD.

SAME *vs.* BOOTT MILLS.

Middlesex.   March 27, 1911. — May 18, 1911.

Present : KNOWLTON, C, J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Negligence,* Employer's liability, Railroad.

If a mill corporation receives from a railroad corporation a car belonging to the railroad corporation and loaded with coal for the mill, and under the sole control of the mill corporation and by its employees the car is moved over tracks of the railroad corporation to tracks of the mill corporation and on to its premises, dumped, and returned to the railroad corporation, the car, during the time that it is thus in the control of the mill corporation, is a part of its appliances and of its ways, works or machinery, and that corporation is liable both at common law and under St. 1909, c. 514, Part I. § 127, cl. 1, for personal injuries received by an employee by reason of a defect in the car which could have been discovered by reasonable diligence.

A mill corporation received from a railroad corporation a certain car belonging to the railroad corporation and loaded with coal for the mill, and under the sole control of the mill corporation and by its employees the car was moved over tracks to its premises to be dumped.  The car was of a variety called a coal dump car, its body being arranged to tip either to one side or to the other of the car and thus to dump its contents, while, when the car was loaded, the body was held in an upright position by a combination of links, dogs, hangers and wooden floor beams.  The method employed by the mill corporation's superintendent to

get the car upon its premises was to start it with some speed toward a curve and then to let it go by its own momentum, a brakeman in the employ of the mill corporation being upon it so that its speed could be checked at the right moment. The superintendent knew that it was necessary that the apparatus which held the car body in place should be able to stand the lateral strain caused by the car striking the curve at speed, and that otherwise the load would be dumped and the brakeman injured. Before the car in question was started toward the curve the superintendent by looking at the ends of the car ascertained that the apparatus in question was in place. He did not discover that the apparatus was, as to its materials, defective and unable to stand the strain to be put upon it, facts which he would have discovered if he had made an examination of the apparatus under the car. By reason of such defects, the apparatus gave way on the curve, the car dumped its contents and the brakeman received injuries from which he died. *Held,* that such failure of the superintendent to discover the defects might be found to be negligence for which the mill corporation might be found to be liable under St. 1909, c. 514, Part I. § 127, cl. 2, § 128, for the conscious suffering and death of the brakeman.

If an employee of a mill corporation receives fatal injuries by reason of a defect in a car which a railroad corporation owns and has delivered to the mill corporation under an arrangement between them, and the existence and failure to discover the defect are due both to negligence of the mill corporation and of the railroad corporation, separate actions may be maintained for such injuries and death respectively against the mill corporation at common law and under St. 1909, c. 514, Part I. §§ 127, 128, and against the railroad corporation at common law and under St. 1906, c. 463, Part I. § 63, St. 1907, c. 392, although there can be only one satisfaction in damages ; and a jury may be permitted to find a verdict in the action against the mill corporation of $3,300 for the death and $200 for conscious suffering ; and a verdict of $6,300 in the action for death against the railroad corporation.

If a railroad corporation transports a car, which it owns and which is loaded with coal, entirely on its own lines to and into the sole control of a mill corporation with the understanding that the mill corporation by its employees shall move the car over tracks to a coal pocket upon its premises, dump it and return it to the railroad corporation, the railroad corporation is liable at common law for personal injuries and under St. 1906, c. 463, Part I. § 63, St. 1907, c. 392, for the death of an employee of the mill corporation who is injured by reason of a defect in the car which would have been discovered if the car had been thoroughly inspected before it was delivered to the mill corporation.

Two ACTIONS OF TORT by the administrator of the estate of Joao de Gouvea. The first action sought recovery under St. 1906, c. 463, Part I. § 63, as amended by St. 1907, c. 392, for the death of the plaintiff's intestate, an employee of the defendant in the second action, who was killed on October 21, 1909, on Amory Street in Lowell by the overturning of a coal dump car belonging to the defendant railroad company. The second action was in three counts, the first count for death and conscious suffering of the plaintiff's intestate, alleged to have been caused by a

defect in the ways, works or machinery of the defendant Boott
Mills, a manufacturing corporation, and for which it was re-
sponsible under St. 1909, c. 514, § 127, cl. 1, § 128; the second
count under § 127, cl. 2, § 128 of the same statute, alleging the
cause of the injury and death to be negligence of a superin-
tendent of the defendant; and the third at common law for con-
scious suffering of the plaintiff's intestate.  Writs dated January
24, 1910.

In the Superior Court the cases and one other, by the same
plaintiff against the railroad company to recover for conscious
suffering of the plaintiff's intestate, were tried together before
*Fox,* J.

The following is a description of the car from which the plain-
tiff's intestate fell, and of the manner in which the accident
happened.

The car was an ordinary four-wheel coal dump car about fifteen
feet long by six feet high, holding four and one half tons of coal.
Its body balanced on its truck, being attached thereto by a cir-
cular or rocker bar front and rear so arranged as to allow the
body to dump to either side.  When not being dumped, four
iron links measuring about eighteen inches by four inches, one
at each corner of the body, engaged four anvil shaped dogs on
the truck, the engagement of a link and dog on each corner
being designed to prevent the body from tipping.  Each link
was attached at its upper end to the body or box part of the car
by means of a small iron casting about six inches long by three
inches wide, called a "hanger," which was bolted in a vertical
position to the side of the beam in the floor of the body, such
beam being parallel with and six or eight inches inside of the
outside sill, each hanger being attached to its beam by two
iron bolts, placed one above the other and running horizontally
through the beam.  Through the middle of the hanger between
the two bolts was a groove through which the upper end of the
link was suspended in such a manner that the link was free to
swing from its bearing upward or downward in the groove.
When the four links were in their usual position over the dogs
on the truck the body of the car could not be tipped to either
side, but when the car was to be dumped to one side or the
other, the two links on the side opposite that toward which the

car was to be dumped were lifted upward by hand off the dogs and the body of the car was then free to tip on the two rockers in the desired direction.  When the car was properly equipped an iron weight was attached to the lower part of each link designed to prevent its accidentally jarring off the dog.  The car on which Gouvea, the plaintiff's intestate, was riding was started by means of the horses, and after the tag had been removed and either at the moment when the car reached the curve or just after that time and while it was still upon the curve, the car body tipped to the right, Gouvea, who was, as above stated, standing on the beam of the body, tipped with it, attempted to jump and was caught by the car body as he did so and was thrown in such a way that the wheels of the truck, which at all times remained on the track, passed over him.

Other facts are stated in the opinion.

At the close of the evidence the defendant, the Boott Mills, made seven requests for rulings.  The first four, which, subject to exceptions by that defendant, were refused by the presiding judge, were to the effect that upon all the evidence the plaintiff was not entitled to recover upon any or all of the counts of the declaration.  The sixth and seventh requests are immaterial because exceptions to their refusal have been waived.

The defendant railroad corporation asked for the following rulings which, subject to its exception, were refused by the presiding judge.

"1.  There is not sufficient evidence to justify a verdict for the plaintiff.

"2.  After the Boston and Maine Railroad had left the car on Amory Street, it was the duty of the Boott Mills of Lowell to inspect the car before its men ran the car from the scales to its destination in the coal shed.

"3.  After the car had reached a place where it was the duty of another to inspect it before moving it, there was no further liability of the railroad for any defect in the car which could have been discovered on inspection.

"4.  Upon the evidence, the car at the time of the accident was an instrument of the Boott Mills in its business, and the Boston and Maine Railroad is not liable for injuries to an employee of the Boott Mills resulting from a defect in the car.

" 5. Upon the evidence, the car at the time of the accident was a part of the ways, works and machinery of the Boott Mills in its business, and the Boston and Maine Railroad is not liable for injuries to an employee of the Boott Mills resulting from a defect in the car.

" 6. The Boston and Maine Railroad is not liable because of the fact that it had notice that cars were operated by the employees of the Boott Mills in the same manner as the car in the accident.

" 7. The jury should disregard the evidence tending to show that the Boston and Maine Railroad knew that the employees of the Boott Mills operated cars in the manner that the car was operated at the time of the accident.

" 8. The Boott Mills and the Boston and Maine Railroad cannot be held liable on the evidence as joint tortfeasors."

In the first case, which was for death only, the jury found for the plaintiff in the sum of $6,300.

In the second case the jury found for the plaintiff in the sum of $3,500, of which $3,300 was for the death of the plaintiff's intestate, and $200 for his conscious suffering.

The defendants severally alleged exceptions.

*F. N. Wier*, (*L. T. Trull* with him,) for the Boston and Maine Railroad.

*F. E. Dunbar*, (*J. J. Rogers* with him,) for the Boott Mills.

*S. E. Qua*, (*F. W. Qua* with him,) for the plaintiff.

BRALEY, J. The plaintiff's intestate while working for the mills as a brakeman in the management of a dump car loaded with coal, suffered injuries by the sudden and premature overturning of the car when in transit, from which after a short period of conscious suffering he died. It is conceded, that the car was defective and unsafe, and the questions are, whether there was evidence of negligence on the part of the respective defendants, or of the intestate's due care.

We first consider the exceptions of the mills. The railroad owned the car, which with other cars filled with coal consigned to the mills, had been left on a side track near the premises, and from there they were drawn by horses over a spur track into the defendant's yard, and unloaded at the coal pocket. The work of moving and unloading was under the sole control of the mills,

whose employees then returned the cars to the railroad. The railroad also owned and maintained that part of the spur track where the accident happened. The defendant manifestly was using the car for the purposes of its own business, and it formed part of its works as if it had been constructed or hired for the purpose. *Foster* v. *New York, New Haven, & Hartford Railroad,* 187 Mass. 21. *McNamara* v. *Boston & Maine Railroad,* 202 Mass. 491. If the defendant provided an unsuitable car, or a car the defects in which could have been discovered by reasonable diligence, its duty to the intestate had not been discharged, either at common law or under the statute. *Cormo* v. *Boston Bridge Works,* 205 Mass. 366. *Ruddy* v. *George F. Blake Manuf. Co.* 205 Mass. 172. *Feeney* v. *York Manuf. Co.* 189 Mass. 336. St. 1909, c. 514, § 127. This question was properly left to the jury under suitable instructions. The work was performed under the supervision of the foreman of the mills, who, the jury could find, had been entrusted with superintendence. *Murphy* v. *New York, New Haven, & Hartford Railroad,* 187 Mass. 18. It was shown, that three of the four cast iron hangers on the car, to which the links were attached, were so cracked " as to be in two parts." The links engaged the dogs, and if the dogs did not hold securely, the car, which was of the " rocker type," might tip and overturn. It also was in evidence, that the wooden floor beam holding the hanger which gave way appeared to be cracked, old and rotten, and was so discolored as to indicate that the split had existed for some time. The defendant's foreman, called by the plaintiff, testified, that as the cars had to turn a sharp curve before reaching the coal pocket, they were given a momentum after leaving the side track and before arriving at the spur track where the horses were detached, which would cause them to " strike the curve . . . at a speed of seven or eight miles an hour." He further said, that the cars could not safely be switched and passed over the curve unless in charge of an employee whose control of the brake would prevent the car from running into the bumper or leaving the track as it approached the pocket. The strain from the lateral motion in rounding the curve, and the speed required, were circumstances known and appreciated by the foreman, who was present directing the work. Before the horses were attached and the car

started, he observed that the links at each end engaged the dogs but made no further effort to ascertain the car's general condition. It does not seem to have been questioned at the trial that a further examination would have been ineffective unless the dumping attachments, which were underneath the car, had been inspected. The jury, however, could have found that the defects were not concealed, and would have been discovered if a thorough examination had been made, and that in failing to take this reasonable precaution before placing the intestate in a position, where if the car, and particularly the dumping apparatus, was not sound he would be exposed to great bodily peril, the foreman was negligent. *Coffee* v. *New York, New Haven, & Hartford Railroad,* 155 Mass. 21, 25. *Feeney* v. *York Manuf. Co.* 189 Mass. 336. The question of the plaintiff's due care was rightly left to the jury, and the defendant's sixth and seventh requests having been waived, the first, second, third and fourth were inappropriate for the reasons stated. *Gaynor* v. *Old Colony & Newport Railroad,* 100 Mass. 208, 211, 212. *Prince* v. *Lowell Electric Light Corp.* 201 Mass. 276.

The exceptions of the railroad corporation relate to the rulings and instructions permitting the jury to find, that it could be held liable at common law, and under St. 1906, c. 463, Part I. § 63, with the mills for concurrent negligence or a joint tort. It is participation in the wrong which establishes liability, and not the amount of damages which may be recovered either at common law, or under our statutes authorizing an action for death caused by the wrongful act of the defendant. *Oulighan* v. *Butler,* 189 Mass. 287, 293, 295. *Flynn* v. *Butler,* 189 Mass. 377, 387, 388. The proximate cause of the accident having been the defective car, the plaintiff was entitled to maintain her action against each or all who contributed to the injury and death of her intestate, although she could have but one satisfaction in damages. *Koplan* v. *Boston Gas Light Co.* 177 Mass. 15. *Turner* v. *Page,* 186 Mass. 600. *Doe* v. *Boston & Worcester Street Railway,* 195 Mass. 168. *Feneff* v. *Boston & Maine Railroad,* 196 Mass. 175, 581, 582. *Lockwood* v. *Boston Elevated Railway,* 200 Mass. 537, 538.

It is urged, that the mills having used the car in its business, and as a part of its works, the control was changed, and the

liability of the railroad for defects therefore had ended.  *Glynn* v. *Central Railroad*, 175 Mass. 510.  *McNamara* v. *Central Vermont Railroad*, 202 Mass. 491, 499.  But the defendant owned the car, and did not receive it from a connecting road to be forwarded.  The transit apparently began and ended on its own lines.  Upon abundant evidence the jury could find, that the arrangement for transportation contemplated, that the cars were to pass from the defendant's track to the private track in the mill yard for the purpose of unloading, and that the defendant authorized the intestate's employer to use the car in question as a means of conveyance.  The railroad concedes, that the jury would have been warranted in finding, that the defects were not incapable of discovery, if the inspection by its employees charged with the duty had been thoroughly made.  But with full opportunity to ascertain its condition, the defendant selected, loaded and forwarded a car which it knew would be received by the mills, and operated by its employees selected to unload it.  It accordingly was bound to furnish and deliver a car which was not defective.  *Ladd* v. *New York, New Haven, & Hartford Railroad*, 193 Mass. 359.  *McNamara* v. *Boston & Maine Railroad*, 202 Mass. 491, 494.  It was a question of fact whether, having authorized the use of a dangerous instrumentality, the defendant ought in the exercise of reasonable care to have anticipated the injurious results which might follow, and to have guarded against them.  *Boston Woven Hose & Rubber Co.* v. *Kendall*, 178 Mass. 232.  *Hale* v. *New York, New Haven, & Hartford Railroad*, 190 Mass. 84.  *Conroy* v. *Smith Iron Co.* 194 Mass. 468.  *Lebourdais* v. *Vitrified Wheel Co.* 194 Mass. 341, 344.  The jury to whom this question was submitted under correct instructions have decided adversely to the defendant, and as matter of law we cannot say that they were wrong.

In each case the exceptions must be overruled.

*So ordered.*