TIMOTHY C. LEAHY, administrator, *vs.* STANDARD OIL COMPANY OF NEW YORK.

Hampshire. September 21, 1915. — May 31, 1916.

Present: RUGG, C. J., LORING, CROSBY, & PIERCE, JJ.

*Negligence*, Where act of third person intervenes, Dangerous substance, Contributory negligence. *Proximate Cause*. *Practice, Civil*, Judge's charge, Province of jury.

In an action for personal injuries due to the negligence of the defendant's servant in placing a dangerous substance where it was likely to cause injury, it

is no defence that the injuries also were due to the subsequent negligence of a third person.

One, who deposits a dangerous substance in a place where as a natural consequence injury ensues, is in no way excused from liability for the consequence of his wrongful act by the fact that the place of deposit was the land of a third person and not in his control.

An employee, who is injured by reason of an explosion of a dangerous substance negligently placed on the land of his employer by another person, in an action against such person· for his injuries is not debarred from recovery by the fact that negligence on the part of his employer contributed to his injury.

In an action of tort for personal injuries, where the charge of the presiding judge contained a correct statement of the law applicable to the case and was deficient only, if at all, in not undertaking to define by illustration the circumstances under which an act of negligence is the cause of an injury, but where that objection to the charge was not brought to the attention of the judge at·the trial, the objection is not open to the excepting party upon an exception to the portion of the charge in question on the ground that it does not state the law correctly.

In the action of tort mentioned above it was *said* that whether one thing was the cause of another is a question of fact on which little help can be given to a jury except by way of illustration.

TORT by the administrator of the estate of John O'Rourke for the death, and the conscious suffering preceding it, of the plaintiff's intestate alleged to have been caused on March 4, 1913, by an explosion of gas generated from gasoline negligently left by an employee of the defendant in a pit in a basement that afterwards was occupied by the plaintiff's employer as a part of the "Draper Garage" in Northampton.   Writ dated July 18, 1913.

In the Superior Court the case first was tried before *King*, J. The jury returned a verdict for the defendant; and the plaintiff alleged exceptions, which were sustained in a decision reported in 220 Mass. 90.

In accordance with the rescript then issued the case was tried again before *Aiken*, C. J.  The evidence at the former trial was described in the former opinion of this court and the evidence at the present trial so far as it differed from the evidence at the former trial is described in the present opinion.

Sullivan, referred to below, was the plaintiff's employer, and was the proprietor of the garage.   Morton, referred to below, was an employee of the defendant who undertook to fill the gasoline tank of the garage, when the gasoline leaked into the cellar which then was being constructed for a new steam heating plant for the garage. The reason for the gasoline flowing into the cellar was Morton's failure to insert the funnel through which he was pouring the gaso-

line into the filler pipe or mouth of the gasoline tank of the garage, and in this way forty-five gallons of gasoline were spilled upon the cellar floor while five gallons went into the tank. Upon being told by one Dalton, a plumber's helper, that gasoline was flowing into the cellar, Morton took a broom, went down to the cellar and swept the gasoline into the pit, although warned that it was an improper way to dispose of it. Morton then went upstairs where he received a check from Sullivan in payment for the gasoline he had put into the tank, saying to Sullivan that he had forty-five gallons of gasoline to pay for himself, because he "did not put the funnel in the filler pipe." A week later the addition to the garage was turned over to Sullivan. A week or two weeks after that, O'Rourke, the plaintiff's intestate, entered Sullivan's employ. On an evening a little more than a month after the addition to the garage had been turned over to Sullivan, Sullivan left the garage between six and seven o'clock, leaving O'Rourke in charge to wash cars and to "fix up the fires." O'Rourke, needing some warm water to wash a car, went down stairs to the boiler room and drew off some water from the boiler and, noticing that the water in the boiler was too low, opened the feed valve that turned on the water to the boiler, but did not know how to shut it off and left the water running. Later in the evening Sullivan returned to the garage and O'Rourke told him this, whereupon Sullivan went down into the cellar and turned off the water that was running into the boiler. Finding that the boiler was too full, he opened the cock and let the surplus water in the boiler run off on the cellar floor. As he reached the top of the stairs after doing this, he met O'Rourke, who said he was going down to put on some coal for the night. For this purpose O'Rourke opened the door of the fire box, and the explosions occurred which caused the injuries that resulted in his suffering and death. The water had run into the pit and the gasoline in the pit, being lighter than the water, had risen to the surface and had flowed out of the pit over the floor, a vaporization of the gasoline ensued and, the vapor coming in contact with the fire, the explosions occurred.

At the close of the evidence the defendant asked the Chief Justice for thirty-one rulings, among which were the following:

"3. Upon all the evidence the injury to the plaintiff's intestate was not the direct consequence of the defendant's negligence and the verdict must be for the defendant."

"9. Upon all the evidence the court must find that it was the duty of the employer of the plaintiff's intestate to see that the premises were reasonably safe for his said employee to work in and that failure of the said employer to perform this duty and not the defendant's negligence was the proximate cause of the injury."

"29. Upon all the evidence in the case, the plaintiff is not entitled to recover and a verdict must be directed for the defendant."

The Chief Justice refused to make these rulings or any of the other rulings requested by the defendant except the twenty-fourth, which he gave as an instruction to the jury as follows: "24. There is no evidence that at the time of the explosion the defendant had any control or custody of the premises upon which the gasoline had been theretofore left by it."

In the charge of the judge were included the following portions:

"If it is your conclusion there was carelessness on the part of Morton in the way he adjusted that tunnel in his purpose to fill the tank with gasoline or put gasoline into the tank, then you come to a still further consideration that is essential in order to create liability. The mere carelessness of misplacing the tunnel would not, of itself, create liability.

"It is not in dispute that the gasoline ran into the cellar. As to the manner it got there, you will be guided and aided by the evidence in the case. We reach the next consideration. It is not in dispute, as I understand it, that it was swept into the pit. Now, gentlemen, we have got to the vital point in the case. If that gasoline in the pit was there under such circumstances that Morton knew, or that Morton ought to know, that it was a probable source of danger, then there is reponsibility for it. It must be established by the evidence in the case, and here comes in the feature in which I have said that jurors have the right to draw reasonable inferences from what appears, that Morton, when the gasoline was in the pit, appreciated or ought to have appreciated that, placed where it was, it was a likely source of danger, that there was a reasonable probability that harm might come from it. Now, as gasoline, in the aspects that are presented in this case, works its injuries when ignited or when its gases explode, we can get closer. There must have been an appreciation or realization on Morton's part that the gasoline in the pit was a source of danger, or, if he did not actually

appreciate it, it must be established that he ought, as a reasonably prudent man to have appreciated it."

"Gasoline was spilled on the twenty-fifth of January. Five weeks and a half elapsed, before the explosion. I come now to the conduct of Sullivan, and I say to you that if Sullivan knew that there was gasoline in the pit, or had reasonable cause to know it, and if Sullivan, in flooding the cellar, did an act that was an imprudent act, knowing that there was gasoline there and appreciating that the gasoline would float upon the surface of the water and would be distributed about the cellar if the pit was overflowed, if, viewing Sullivan's conduct, you say that Sullivan did not act in the prudent manner that he should have acted and is, therefore, to blame for the accident, by reason of putting the gasoline into such a position that the gasoline or its vapors ignited and exploded, if Sullivan was negligent, he might also be responsible legally for the damages resulting from the accident and could have been joined in this action or could have been separately sued for the consequences, if he was to blame by reason of acting imprudently or carelessly. But I instruct you further that if the conditions existed that I have laid down as essential to create liability on the part of the defendant company existed, namely, a realization on the part of Morton that he had done an act that was liable and probable to cause injury, and appreciated that it was liable to cause injury, or should have appreciated that it was liable to cause injury, the defendant is responsible for the consequences, although there was subsequently, on the part of Sullivan, negligent conduct which caused the explosion and without which there would have come no harm to O'Rourke. I say to you, gentlemen of the jury, repeating with more brevity and very likely with greater clearness, that although it may be your conclusion that Sullivan was to blame, was negligent, there is, nevertheless, responsibility on the part of the defendant company, if, on your conclusion on the evidence in the case, Morton appreciated, or ought to have appreciated in disposing of the gasoline as he did that he was doing an act that would probably cause injury that was reasonably likely to result injuriously."

"The defendant is not absolved from responsibility, although there was negligence on the part of Sullivan which contributed to the explosion, and provided the appreciation on the part of Morton

existed that he was doing a dangerous act, or there was an appreciation, or there ought to have been an appreciation, that it was a dangerous act.

"I want you to understand, gentlemen of the jury, that the recovery of damages against one person for an injury is a bar to the recovery against any one else, provided the damages are satisfied by payment. If there is a right to bring action, if there is contributive negligence by different persons that, by combination, results in an injury, there is the right to proceed against all who contributed by action to the result. There can be but one recovery. The recovery against any one of any number of participants in a wrongful act, and the satisfaction by payment of the damages awarded, is a bar against recovery against all; others involved in it.

"I say to you, gentlemen of the jury, that the connection in the line of causation between the accident and the blame for it is sufficiently established if, upon the evidence in the case, you are satisfied that there was, on the part of Morton, an appreciation that he was doing a dangerous act in disposing of the gasoline as he did, or if there should have been an appreciation on his part in so disposing of it he was doing a dangerous act."

At the close of the charge, the defendant excepted "to that portion of the charge inconsistent with the defendant's requests in which the action of Sullivan is commented upon and the liability of the defendant in that relation, and to the rule as laid down by the court with respect to the liability of the defendant in the event of the act, the latter act, of Sullivan."

The jury returned a verdict for the plaintiff, assessing the damages on the first count, for causing death, in the sum of $4,000 with interest from the date of the writ in the sum of $454.40, and on the second count, for suffering preceding death, assessing damages in the sum of $6,000 and adding as interest the sum of $681.60. The defendant alleged exceptions.

*H. Parker,* for the defendant.

*J. C. Hammond & W. J. Reilley,* for the plaintiff.

LORING, J. The facts shown at the trial of this case consequent upon the decision in *Leahy v. Standard Oil Co. of New York,* 220 Mass. 90, were in the main the same as those which appeared in evidence when the case was first tried. There were, however, one

or two new matters in evidence at the second trial which should be stated. At the second trial it appeared that the cover of the pit was made of wood; and that there was an automatic pump to pump the contents of the pit to a washing stand in the old garage from which the contents "flowed out upon the open floor and into a manhole connecting with the sewer" of the city. The pipes of this pump went into the pit through holes in the wooden cover and the gasoline which was discharged by Morton on to the floor of the new boiler room found its way into the pit through these holes and through the edges of the wooden cover. This was possible because the pipes did not fully fill the holes in the wooden cover through which they entered the pit and the cover did not fit closely to the edges of the pit. This pump was not designed to pump the pit dry. When the liquid in the pit was reduced to a depth of seven inches the pump ceased to work. At the time that Sullivan ran the water out of the boiler there were or the jury were warranted in finding that there were about seven inches of gasoline in the pit and that this gasoline diluted with the water of the boiler ran out on the floor because the water of the boiler ran into the pit faster than the contents of the pit were pumped out by the pump. The gasoline and the water "overflowed the pit; it came out on the floor and covered it probably about quarter of an inch."

Sullivan, the owner of the garage, testified that when he was told by Morton of the spilling of the gasoline in the addition then under construction, he went to it and found the doors nailed and locked and was told by Dunn, the head plumber, that he "could not go down there." In addition he testified that "he did not then learn about any disposition of the gasoline." Sullivan further testified that "he knew that the State inspector had gone over it" (the addition) before he took possession on the first of February; that when he took possession on the first of February "there was no evidence of gasoline in the cellar" and the fires were going in the boiler; that "he went to the cellar on the first or second of February with Mr. Riley, the plumber." And that he did not know that the gasoline had been swept into the pit until the morning after the explosion.

Brandle, the owner of the addition, testified that the plumber told him that the gasoline which had been spilled in the addition had been cleaned up; that he was told that "the windows were

open .. . . and it was all safe;" that the plumbers had told him that "it [the gasoline] was all cleaned up."

An expert testified that the gasoline in the pit could be made into a dangerous vapor by "its being heated" as well as by its dilution by water flowing into the pit and, if the cover was off, by a current of air caused for example "by a person walking to and fro."

At the close of the evidence the defendant asked the presiding judge to make thirty-one rulings of law, of which one was given and thirty were refused. In addition to taking an exception to the refusal to give the rulings asked for, the defendant excepted to "the rule as laid down by the court with respect to the liability of the defendant in the event of the act, the latter act, of Sullivan."

It is not necessary to decide what the rule of law is which would have governed this case if the jury had found Sullivan's intervening act to have been an innocent one. If for example, Sullivan neither knew nor ought to have known of the presence of the gasoline in the pit, his act of emptying the boiler by running out the water on to the cellar floor would not have been a. negligent act. The intervening act of a third person "is important not *qua* cause, but *qua* wrongdoer." An innocent intervening act of a third person stands "on no different footing from the force of gravitation" for example, as Holmes, J., said in another connection in *Hayes* v. *Hyde Park*, 153 Mass. 514, 516. But it was pointed out in that opinion that there was no question of remoteness in that case.

The ruling complained of in the case at bar dealt with the rule of law governing this case if the jury found that Sullivan's act was a negligent act.

When this case was here before (*Leahy* v. *Standard Oil Co. of New York*, 220 Mass. 90), it was decided that the rule acted upon in *Burke* v. *Hodge*, 217 Mass. 182, was the rule applicable here if Sullivan's act was a negligent one. The learned counsel for the defendant has contended that the rule which governs this case in the event that Sullivan's act was a negligent one is that laid down in *Lane* v. *Atlantic Works*, 111 Mass. 136, and under that rule no case for the jury was made out here. The short answer to that contention is that the rule acted upon in *Burke* v. *Hodge* is quite different from that laid down in *Lane* v. *Atlantic Works*, and that it was decided when the case was here before that the rule of *Burke* v. *Hodge* was the rule governing this case.

In a case where there is an intervening negligent act of a third person we have a case where "There is more obscurity than there ought to be, perhaps, upon the limits of liability in general," as was said in *Glynn* v. *Central Railroad*, 175 Mass. 510, 511. We think it better to make a more full answer to the contention than the short one stated above.

Cases like *Lane* v. *Atlantic Works* are to be distinguished from cases like *Scott* v. *Shepherd*, Wm. Bl. 892, and *Ogden* v. *Aspinwall*, 220 Mass. 100, where the intervening act is an involuntary one. In cases like *Lane* v. *Atlantic Works* (where the occasion of the injury suffered by the plaintiff is an intervening wrongful act) the intervening act is an independent act of volition on the part of a third person. It is with an intervening act of that kind that we have to deal with here.

The rule laid down in *Lane* v. *Atlantic Works* is stated in these terms: "In actions of this description, the defendant is liable for the natural and probable consequences of his negligent act or omission. The injury must be the direct result of the misconduct charged; but it will not be considered too remote if, according to the usual experience of mankind, the result ought to have been apprehended. The act of a third person, intervening and contributing a condition necessary to the injurious effect of the original negligence, will not excuse the first wrongdoer, if such act ought to have been foreseen. The original negligence still remains a culpable and direct cause of the injury. The test is to be found in the probable injurious consequences which were to be anticipated, not in the number of subsequent events and agencies which might arise."

This rule has since then been acted upon in numerous cases. In the following cases it was held that a case for the jury had been made out under this rule. *Elmer* v. *Locke*, 135 Mass. 575. *Koplan* v. *Boston Gas Light Co.* 177 Mass. 15. *Murray* v. *Boston Ice Co.* 180 Mass. 165. *Turner* v. *Page*, 186 Mass. 600. *Oulighan* v. *Butler*, 189 Mass. 287. *Flynn* v. *Butler*, 189 Mass. 377. *Butler* v. *New England Structural Co.* 191 Mass. 397. *Ladd* v. *New York, New Haven, & Hartford Railroad*, 193 Mass. 359. *Toohy* v. *McLean*, 199 Mass. 466. *Mullen* v. *Zides*, 216 Mass. 202. *Sousa* v. *Irome*, 219 Mass. 273. *Norton* v. *Chandler & Co. Inc.* 221 Mass. 99.

The rule acted upon in *Burke* v. *Hodge* is stated in these terms:

"The instructions given to the jury required them, in order to answer the issue affirmatively, to find that this negligence of the defendants was the sole efficient cause of the accident.  The judge said that the question was whether this was the real cause, the compelling cause, of the accident.  He told the jury that the answer to the issue should be 'No,' if there was intervening negligence of McArthur Brothers without which the wall would not have fallen.  And after his charge had been finished, when his attention was called to this matter, he further said to the jury: 'You must find that the wall fell because of the negligent mixing and [that] it would have fallen as and when it did if the braces, the forms, had not been removed.'  This was too stringent a rule.  It was enough for the plaintiffs to show that the falling of the wall was due to the combined effect of the negligence of the defendants in mixing the concrete and of that of McArthur Brothers in removing the forms. *Feneff* v. *Boston & Maine Railroad,* 196 Mass. 575, 580, *et seq.* *Bagley* v. *Wonderland Co.* 205 Mass. 238, 245, 246.  *D'Almeida* v. *Boston & Maine Railroad,* 209 Mass. 81, 87.  *Hunt* v. *New York, New Haven, & Hartford Railroad,* 212 Mass. 102, 107, 108.  *Brown* v. *Thayer,* 212 Mass. 392, 397.  *Dickey* v. *Willis,* 215 Mass. 292, 293.  The plaintiff was entitled to have the issue found in his favor and to hold the defendants, although the accident would not have happened without the negligence of McArthur Brothers, if it also appeared that it would not have happened but for the negligence of the defendants which has been stated and that each of these different acts of negligence was a proximate cause of the accident, in the sense that the accident was directly due to the combined effect of these two causes and not merely to the negligence of McArthur Brothers."

It must now be taken to be settled (at least in this Commonwealth) that the natural and probable consequences of the defendant's act are to be looked to in determining their character, see *Sponatski's Case,* 220 Mass. 526, 530, 531.  But in cases of negligence for example, when the character of the defendant's act is determined, that is, when it is determined that the defendant's act was a negligent one, the question of causation, that is, the question whether the injury suffered by the plaintiff was in fact caused by the defendant's negligent act, is one not affected by what the natural and probable consequences of that act were.  What was said by the

present Chief Justice in *Sponatski's Case, ubi supra,* pages 530, 531, is of general application. The question of causation is one and the same question no matter how the defendant's liability is made out. It is of no consequence whether the fact by reason of which the defendant is liable, is made out under the workmen's compensation act, under the act which makes a railroad liable if certain signals are not given (as in *Daniels* v. *New York, New Haven, & Hartford Railroad,* 183 Mass. 393), or under the rule governing common law actions of negligence. When it is established that the fact exists by reason of which the defendant is liable if the necessary relation of cause and effect is made out between that fact which makes the defendant liable and the injury suffered by the plaintiff, the question whether that relation of cause and effect did or did not exist is one and the same question.

The doctrine of *Lane* v. *Atlantic Works* may well rest on the proposition that the third person's intervening act is in the contemplation of the law the act of the defendant if it is the natural and probable consequence of the defendant's act. In that case it is in the eye of the law the defendant's act because in the eye of the law every man is taken to have contemplated the natural and probable consequences of his acts as was laid down by this court in another connection in the recent case of *Matthews* v. *Thompson,* 186 Mass. 14. To repeat, where the intervening act of the third person is a natural and probable consequence of the defendant's act the act of the third person is in the eye of the law the defendant's act. See for example *Commonwealth* v. *Hackett,* 2 Allen, 136; *Regina* v. *Halliday,* 61 L. T. (N. S.) 701; *Wise* v. *Dunning,* [1902] 1 K. B. 167; *Guille* v. *Swan,* 19 Johns. 381. For a collection of cases on intervening acts of third persons, see Beale, Cases on Legal Liability, 279–498.

The question whether the wrongful intervening act (in cases like *Lane* v. *Atlantic Works*) is or is not one of the natural and probable consequences of the defendant's negligent act may have an additional aspect which is or may be of importance in some of these cases. To make out negligence on the part of the defendant it is necessary for the plaintiff to prove that the natural and probable consequence of his acts is that harm of the same general character as that which came to the plaintiff would be likely to come from it to persons who stood in the same general relation to the defend-

ant as the plaintiff.    Where the harm which has come to the plaintiff has come to him through the wrongful intervening act of a third person, the plaintiff may not come within the class of persons to whom the defendant was negligent (that is, with regard to whom he failed to exercise the care he owed to persons of the class in question) unless the wrongful intervening act through which the harm came to the plaintiff was a natural and probable consequence of the act of the defendant.    There are traces in the opinion in *Stone* v. *Boston & Albany Railroad,* 171 Mass. 536, that this aspect of the matter was in the mind of the court in that case, see pages 539, 542.    And this would seem to be the ground of decision in *McIntire* v. *Roberts,* 149 Mass. 450.

It was held in *Burke* v. *Hodge, ubi supra,* that liability on the part of a defendant who is negligent may be made out when there is an intervening wrongful act of a third person without recourse to the rule in *Lane* v. *Atlantic Works.*    It has been said that ordinarily the law does not look back of the last wrongdoer.    See for example *Glynn* v. *Central Railroad,* 175 Mass. 510, and cases there cited.    But *Burke* v. *Hodge* is a case where it does.    That is to say it was held in *Burke* v. *Hodge* that there may be cases where the first act of negligence is of such a character that it continues to be and is a cause of the injury suffered by the plaintiff although there is an intervening wrongful act of a third person.    In that case it is a cause of the injury to the plaintiff concurrent with the wrongful intervening act of the third person.

There is no conflict between the rule of *Lane* v. *Atlantic Works* and that of *Burke* v. *Hodge.*    But these two rules (both of which are sound) show that the liability of an original wrongdoer as matter of law can be made out in two different ways, where there has been an intervening wrongful act of a third person.

When the case was before the court before it was held that this was such a case.    We see no reason for questioning the conclusion then reached.    It follows that there was a case for the jury even if Sullivan's intervening act was a negligent one, and the refusal to give the third, ninth and twenty-ninth rulings asked for was right.

Without taking them up one by one it is enough to say that we have considered the other twenty-seven rulings asked for by the defendant but not given and find none which stated correctly the rule which governs the decision of this case.

We proceed to consider the contentions and cases relied upon by the defendant in his argument at the bar.

The defendant insists that *Denny* v. *New York Central Railroad,* 13 Gray, 481, *Tutein* v. *Hurley,* 98 Mass. 211, *Stone* v. *Boston & Albany Railroad,* 171 Mass. 536, *Horan* v. *Watertown,* 217 Mass. 185, *Glassey* v. *Worcester Consolidated Street Railway,* 185 Mass. 315, *Higgins* v. *Higgins,* 188 Mass. 113, and *Bellino* v. *Columbus Construction Co.* 188 Mass. 430, are decisive of the case at bar. We have already referred to *Stone* v. *Boston & Albany Railroad.* The ground of those decisions was that on the evidence in those cases as matter of law the jury were not warranted in finding that the defendant's negligent act was the cause of the injury suffered by the plaintiff. That is to say that the negligence of the defendant had reached and passed the vanishing point as a cause so far as the injury to the plaintiff was concerned. That was not true of Morton's negligence in the case at bar. The question of causation is a pure question of fact to be decided by the jury. But (as in case of other questions of fact) where there is no evidence justifying a finding that the defendant's negligent act caused the injury suffered by the plaintiff a question of law arises to be dealt with by the court.

The defendant cannot escape liability by suggesting that in the case at bar the dangerous article which he negligently deposited (if he was negligent in depositing it there) was deposited on land of a third person. *Coman* v. *Alles,* 198 Mass. 99, and *Moret* v. *Fuller Co.* 195 Mass. 118, have no application to the case at bar.

We are of opinion that the intestate was not by implication and imputation guilty of contributory negligence if Sullivan was negligent and what was said in *Shultz* v. *Old Colony Street Railway,* 193 Mass. 309, 315, does not apply.

The defendant's last contention is that the exception taken to the charge should be sustained. The charge in substance followed the rule laid down in *Burke* v. *Hodge* which had been decided was the rule governing this case if Sullivan's act was a negligent one. So far as it went the charge was correct. If it was deficient it was in not undertaking to define by illustration the circumstances under which an act of negligence is a cause of an accident. That objection to the charge was not brought to the attention of the presiding judge. If such an objection had been brought to his attention

he could have added to his charge.   But no complaint of that kind was made at the time.   The objections made by the defendant at the time were those set forth in the thirty-one rulings asked for by him, no one of which correctly stated the principle of law which governed the decision of this case.

The defendant complains that the presiding judge gave the jury no guide as to the rule which should govern them in passing upon the question whether Morton's negligence was a cause of the injury suffered by the plaintiff's intestate in spite of but concurrent with the intervening act of Sullivan.   But that is an objection to the rule of *Burke* v. *Hodge,* rather than an objection to the charge of the presiding judge under that rule.   Whether one thing was the cause of another is a question of fact on which little help can be given to a jury except by way of illustration.   As we have already said this objection to the charge was not suggested to the presiding judge.

*Exceptions overruled.*